## WOOD RAY WOODLEY V. THE STATE.

No. 22514.   Delivered May 19, 1943.
Rehearing Denied June 25, 1943.

The opinion states the case.

*J. D. Bell,* of Paducah, and *Isaac O. Newton,* of Seymour, for appellant.

*Spurgeon E. Bell*, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

Appellant was convicted of the offense of aggravated assault and battery, and his punishment was assessed at confinement in the county jail for a period of 18 months and a fine of $1,000.00.

Appellant's main contention is that the evidence is insufficient to sustain his conviction. In order that this opinion may reflect the basis for our conclusion on the question presented, we deem it proper to briefly state the evidence adduced on the trial. The testimony introduced by the State shows that on the night of December 13, 1941, Virgin Peters, was moving from Sweetwater to Paducah; that when he passed the skating rink he encountered much traffic, automobiles being parked on both sides of the street, and some were double-parked, which interfered with the traffic; that as he was passing along the street, he encountered one car parked behind another; that when he started around the cars, he met a car coming from the opposite direction; that the cars did not collide but got very close together; that J. B. Cabiness, Jr., and J. Q. Thompson came upon the scene, and Cabiness asked appellant what he was doing, trying to run over the car, and they began to argue, and at the same time appellant was trying to get out of his car; that when he got out on the fender, Cabiness, the deceased, took him and slung him on the curb. Other State's witnesses testified that Cabiness jerked appellant out of his car and a fight ensued; that Lloyd Love, who was in the car with appellant and his wife, also got out of the car and he (Love) and Thompson engaged in a fight. Then Cabiness and Thompson went to their automobile and started to leave, when appellant got on the fender of their car and struck once or twice at Cabiness. One or two witnesses testified that after Cabiness and Thompson left, appellant made the remark: "If I didn't cut him, I cut his clothes off of him or his jacket."

The State offered in evidence appellant's voluntary confession, which, omitting the formal parts, reads as follows: "Saturday night, December 13th, 1941, my wife, baby, Loyd Love and myself were going East on the street in front of the skating rink, in my car. I drove up in front of another car on my side of the street and stopped there. J. B. Cabiness came out to my car and said, 'What are you trying to do, monopolize the street?' I said, 'No,' and after a few words he told me to get out and he would show me what he would do about it. I got out and

he slung me about 10 feet. Before I could get back to him, J. Q. Thompson caught me and we fell to the ground. J. B. and Loyd Love were fighting. When they quit fighting J. B. went to his car across the street and then came back and got J. Q. Thompson and they both went to J. B.'s car. I, with several others, followed them to the car and as J. B. drove off I got on the fender and struck him at once. I don't know whether I hit him or not. I had a knife in my pocket but did not get it out at any time. I did not hit him or hit at him with a knife."

The doctor who treated J. B. Cabiness testified that he found two wounds: one a very superficial wound on the arm and a stab wound under the left shoulder blade, which went through to the hollow of the chest, from which he bled profusely, both internally and externally, as a result of which he developed pneumonia and died about three days later.

Appellant, his wife and other witnesses, testified that the deceased opened the door of appellant's car, jerked him out and slung him upon the street; that appellant got up and engaged in a fight with the deceased; that the deceased knocked him down apparently with his fist; that when Love got out of the car the deceased knocked him down; that in the meantime, Thompson grabbed appellant around the arms and held him while the deceased and Love were scuffling.

Appellant testified that he cut the deceased in self-defense after the deceased had pulled him out of the car, "slung" him on the pavement, and while they were fighting; that when Thompson grabbed him around the arms and held him, he dropped his knife; that he did not have any knife when the deceased and Thompson were in the act of leaving in their car; that he did get on the fender of the deceased's car and strike him with his fist; that when he came back to his car he found his knife and picked it up. He further testified that he cut the deceased in self-defense, with no intent to kill him, but to prevent serious bodily injury to himself.

If appellant stabbed the deceased after the deceased had abandoned the conflict and while he was in his car in the act of leaving, the right of self-defense did not exist. Hence the question arises, when did appellant cut him? Was it during the time they were in personal combat or after the deceased had abandoned the difficulty and was in the act of leaving? This was a question of fact which the jury determined adversely to him. Evidently the jury did not believe that he intended to kill

the deceased or they would have convicted him of murder instead of aggravated assault.

By Bill of Exception No. 1 complaint is made of the action of the trial court in overruling appellant's third application for a continuance because of the absence of the witness, Loyd Love. Several reasons exist why the action of the trial court in this particular was not error, the chief of which is that the testimony of the absent witness would have been cumulative of that of other witnesses who testified upon the trial of the case. The rule is well established that the refusal of a second or subsequent motion for a continuance for cumulative testimony is not error. See Rogers v. State, 71 Tex. Cr. R. 149; Bosley v. State, 69 Tex. Cr. R. 100; Rose v. State, 79 Tex. Cr. R. 413; Flores v. State, 116 Tex. Cr. R. 169; White v. State, 131 Tex. Cr. R. 455, 99 S. W. (2d) 611; Moore v. State, 131 Tex. Cr. R. 420, 99 S. W. (2d) 915.

Appellant addressed a number of objections to the court's charge and requested some special charges which the court declined to submit to the jury.

The only serious question presented for review by the record relates to the court's action in failing to instruct the jury upon the law of a lesser attack than one which was reasonably calculated to create in the mind of the appellant an apprehension or fear of death or serious bodily injury, or to give appellant's special requested charge on the subject. If there be any evidence, no matter from what source, which fairly raised the issue, and we think there is, then he was entitled to an instruction on the law as contained in Article 1224, P. C., and a proper application thereof to the facts. Appellant, in due time, objected to the court's charge by reason of such omission and presented a special requested instruction on the subject which, however, was not an accurate statement of the law. Nevertheless, it together with the objection to the court's charge, was sufficient to pointedly direct the court's attention to such omission. That appellant was entitled to an instruction on every issue raised by the evidence and an application of the law to the facts must be conceded. The failure to do so, when timely objected thereto, is a denial to the defendant of his legal rights. It may be contended that since the jury acquitted appellant of murder and found him guilty of aggravated assault, and since the court in his charge on aggravated assault did not specifically limit the appellant's right of self-defense against an assault which created in the mind of the appellant an apprehension or

fear of death or serious bodily injury, he has no just ground of complaint. An examination of the court's charge shows that in Paragraph 13, he instructed the jury as follows: "A person is permitted to defend himself or the person of another against any unlawful attack, or against what to him might reasonably appear to be an unlawful attack, reasonably threatening danger to his person, or the person of another; and it is not necessary that there be actual danger, provided he acted upon the reasonable appearance or apprehension of danger as it appeared to him from his standpoint at the time."

Following this charge the court instructed the jury on the law of self-defense but limited appellant's right of self-defense therein as against an attack by the deceased which caused appellant to have a reasonable expectation or fear of death or serious bodily injury. Thereafter, in charging on aggravated assault, he instructed the jury that if they believed from the evidence that appellant made an assault upon the deceased, but did so in defense of himself or in defense of his friend, Lloyd Love, then to acquit him altogether. What did the court mean when he charged, "If he did so in defense of himself or in defense of his friend?" A defense against what kind or character of attack did the jury understand the court to have reference to? Did they understand he meant a defense against an attack threatening death or serious bodily injury such as he had theretofore instructed the jury would justify the killing or that he meant a lesser attack, a subject upon which he had given no instruction whatever? In the absence of an instruction on the law of defense against a lesser attack, the jury were authorized to assume that the court referred to an attack which created in the mind of the defendant a reasonable expectation or fear of death or serious bodily injury. Consequently, the jury had no guide by which to determine the appellant's right in case they found that the attack upon the appellant by the deceased, although of a violent nature, did not threaten death or serious bodily injury to the appellant. See Taylor v. State, 122 Tex. Cr. R. 507. Even though the assault upon appellant by the deceased was unlawful and of a violent nature, yet this would not be a justification for the killing, unless appellant first resorted to all other reasonable means available to him at the time, except retreat, to repel such attack, and then the killing must take place while the person killed is in the very act of making such unlawful and violent attack. See Gilley v. State, 15 Tex. Cr. App. 287, (301); Bryant v. State, 51 Tex. Cr. R. 66; Prater v. State, 155 S. W. (2d) 934, and authorities there cited. However, in repelling such attack, if the force used by appellant exceeded that

which was necessary under the circumstances, as viewed from his standpoint at the time, he might be convicted of some grade of assault, but his right to defend should not be limited to defend against an assault threatening death or serious bodily injury. See Holcomb v. State, 98 Tex. Cr. R. 456, 265 S. W. 1039; Cloudy v. State, 152 S. W. (2d) 363.

For the error herein pointed out, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The State has filed a very insistent motion in this case, by which it is urged that because paragraph 13 of the court's charge presents the unlimited right of self defense, including the right to protect oneself against any unlawful attack, the requirements of the law were fully met. It is evident from reading the original opinion that this question was not overlooked. It is sufficiently discussed in the absence of citation of other authorities by the State.

We find none in the motion and conclude that further treatment of the subject is not called for.

The State's motion for rehearing is overruled.