**Guadalupe Flores OGAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–82–0125–CR.**

Court of Appeals of Texas, Amarillo.

June 7, 1983.

Rehearing Denied June 23, 1983.

White, Self, Davenport & Bass, Bob Bass, Plainview, for appellant.

Richard L. Moore, Dist. Atty., Plainview, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellant Guadalupe Flores Ogas brings this appeal from her conviction of the offense of murder and the consequent jury assessed punishment of fifteen years confinement in the Texas Department of Corrections. We affirm the judgment of conviction.

The record reflects that in June or July of 1979, appellant and Epifanio Salazar, the deceased, began a relationship which culminated in appellant's discovery, in July of 1980, that she was pregnant. When the deceased learned of the pregnancy he stopped seeing appellant. In November of 1980, appellant learned that the deceased might be returning to Mexico and she went to his place of residence to discuss his failure to see or support her. Upon arrival, she discovered no one at home so she went into the house. While there, she placed a stereo belonging to the deceased in her car and discovered some letters to the deceased from other women.

Examination of the letters caused appellant to believe that Salazar had a history of abandoning his girlfriends when they became pregnant. When the deceased arrived, appellant observed that he had been drinking. She then inquired if the deceased was indeed going to Mexico. Upon receiving an affirmative answer, appellant rebuked Salazar and challenged his manhood. Salazar's response was to slap appellant, then five months pregnant, knocking her into a sofa.

As appellant arose from the sofa, the deceased opened the door and, in appellant's words, "he point me—he point me to get out" and told her to give back the stereo. Appellant cried and asked the deceased if he cared about her and the baby. Upon receiving a negative response, she became very angry, ran to the car, picked up a gun and shot the deceased several times as he was about ten feet away and approaching her. The deceased later expired as a result of the gunshot wounds.

In asking for reversal, appellant urges two grounds of asserted error. In the first ground, she argues the trial court should have submitted to the jury the defensive issue of self-defense. In the second, she says the court should have submitted the defensive issue of defense of a third person, i.e., appellant's unborn child.

■ In argument under ground one, appellant correctly states the general proposition that, when a defensive issue such as self-defense is raised and a charge is properly requested, the issue must be submitted to the jury. *Garcia v. State,* 492 S.W.2d 592 (Tex.Cr.App.1973). We must, therefore, review the testimony to determine if it required the submission of the defensive issue of self-defense.

Appellant was the only surviving witness as to the shooting. Her testimony pertinent to the question under consideration is as follows:

Q. Describe exactly how you left his house?

A. I ran to the car.

Q. Okay.

A. Then I open the door and I think about that little gun that I used to carry in my—

Q. Did he tell you to go to the car for any reason before you left?

A. Yes. He told me to go give back that stereo.

Q. Okay. Was he—could you describe whether or not he was rough with you or—

A. He was.

Q. —or whether he was gentle with you?

A. No. He was rough with me.

Q. Did you have any concern that he might harm you again or slap you again?

A. Well, I was afraid—when I turn he was coming toward me and I don't know if he was mad at me or he was going to do something to me. And I got that gun and I shot him, I don't know how many times.

On cross-examination, she testified:

Q. Okay. He was 10 feet away. All you know is he was walking towards you and you shot him, right?

A. Yes.

Appellant's claim of self-defense must initially rest upon Tex.Penal Code Ann. (Vernon 1974) Sec. 9.31 *, which provides that:

> ... a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

Additionally, Sec. 9.31 specifically provides in subparagraph (d) that "the use of deadly force is not justified under the subchapter except as provided in Sections 9.32, 9.33 and 9.34 of this code." Section 9.33 and 9.34 relate, respectively, to the defense of third persons and the prevention of one injuring himself and are not pertinent to the issues in this ground of error. Section 9.32 provides that a person is justified in using deadly force when (1) use of any force would be justified under Section 9.31; (2) a reasonable person in the actor's situation

would not have retreated; and (3) that the actor "reasonably believes that the deadly force is immediately necessary ... to protect himself against the other's *use or attempted use of unlawful deadly force.*" [Emphasis added].

■ It thus appears that, in an instance where a person employs deadly force, a charge on self-defense is not required unless the evidence raises the elements set out in both Sections 9.31 and 9.32. *See Bray v. State,* 634 S.W.2d 370 (Tex.App.—Dallas 1982, no pet. dis'y rev.).

■ We do not believe the evidence sufficient to raise the elements of Section 9.32. Even assuming, arguendo, that the requirements of Section 9.31 as to the use of ordinary force had been met, there is nothing in the record to justify the use by appellant of deadly force. For example, there is nothing to show that a reasonable person in appellant's circumstances would not have retreated. Appellant was, by her testimony, allowed to leave the house and was, at the time of the shooting, at her automobile. Her freedom of movement was in no way restricted.

■ Moreover, and even more importantly, there is nothing in the record to indicate that Salazar used or attempted to use deadly force so as to justify appellant's deadly response. Section 9.01 defines deadly force as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing death or serious bodily injury." Appellant's testimony was that after a brief argument Salazar slapped her once on the face. A slap, by general acceptance, indicates a blow with the open hand. However, in this context, whether the blow was with an open or closed hand is immaterial, since we do not believe such a blow constituted the use or attempted use of deadly force. See *Rucker v. State,* 599 S.W.2d 581 (Tex.Cr.App.1979).

In making this determination, we have considered the fact that appellant was preg-

---

* References hereinafter made to Section numbers are made to those sections of the Texas Penal Code.

nant and the argument might be made that a blow which would not cause death or serious bodily injury to a person of normal health could cause reasonable apprehension of such consequences to her. Again we note the single blow was to the face and not to the area of the fetus. The surrounding circumstances at the time of the actual shooting would not support such a fear and, indeed, the testimony of appellant does not indicate that any such particularized fear was operative on her mind.

Appellant advances the proposition that if the evidence supported the use of non-deadly force by an assailant a charge on self-defense is required even when deadly force was used by a defendant. In support of that position she cites the cases of *Carter v. State,* 515 S.W.2d 668 (Tex.Cr.App.1974); *Emmons v. State,* 489 S.W.2d 625 (Tex.Cr. App.1973); *Harrison v. State,* 141 Tex.Cr.R. 526, 150 S.W.2d 244 (1941); and *Woodley v. State,* 146 Tex.Cr.R. 260, 172 S.W.2d 318 (1943). All of these cases involved a construction of Texas Penal Code Ann. art. 1224 (1925). Under that statute, a person, in response to an attack by nondeadly force, could, after first resorting to all other means, resort to deadly force. *See: Woodley v. State, supra,* and *Jones v. State,* 125 Tex.Cr.R. 454, 69 S.W.2d 65 (Tex.Cr.App. 1933). As we pointed out above, by express provision of the current statute, that is no longer the law. Consequently, we believe these decisions are no longer of precedential value. Since the evidence in this cause is not sufficient to raise the elements of both Secs. 9.31 and 9.32, no charge on self-defense was required. Ground of error one is overruled.

■ As mentioned above, in ground two appellant urges error in the failure of the trial court to charge on the issue of defense of a third person, in this instance, appellant's unborn child. Sec. 9.33 provides that a person is justified in using force or deadly force against another to protect a third person if:

(1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or

9.32 of this code in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.

It is obvious that the threshold question for our decision is whether an unborn fetus is a "person" within the purview of Sec. 9.33. The term "person", as used in the Penal Code, is defined in Sec. 1.07(a)(27) as "an individual, corporation, or association." Section 1.07(a)(17) defines an "individual" as a "human being who has been born and is alive." It thus appears that an unborn fetus is not included within the statutory definition of "person" and, hence, not included within the provision of Sec. 9.33. We believe the trial court did not err in failing to give the requested charge. We must therefore overrule ground of error two.

There being no reversible error, the judgment of conviction is affirmed.