COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

RANDALL JOSEPH MUSIAL,                            )                    No. 
08-02-00029-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                       204th District Court

                                                                              )

THE STATE OF TEXAS,                                     )                   of Dallas County, Texas

                                                                              )

Appellee.                           )                       (TC# F-0032367-JQ)

 

O
P I N I O N

 

Appellant,
Randall Joseph Musial, and complainant, Billy Musial, were brothers.  The two had a turbulent relationship, which
ended with Randall shooting Billy to death in a final confrontation.  The only firsthand account of this
confrontation at trial came via appellant=s
statements to police.  A jury convicted
appellant of murder and assessed life imprisonment and a $10,000 fine.  On this appeal, appellant claims the trial
court erred:  (1) in refusing to charge
the jury on self‑defense; (2) in refusing to charge the jury on the
lesser‑included offense of aggravated assault; and (3) in admitting
autopsy photos of the complainant.  We
affirm. 








Appellant
came to live with his brother, Billy, and his wife, Alice, in March 2000.  Billy and Alice had met in 1989 and later
married.  But by the time appellant moved
in, the couple was having severe marital problems.  Appellant and Alice then had an affair, which
broke up the marriage, leaving Billy Aheartbroken.@ 
Fatefully, on July 17, 2000, Alice entered appellant=s apartment and found Billy dead in a
chair.  He had been shot twice in the
head.

According
to appellant, he and Billy were involved in numerous altercations prior to the
shooting.  First, when appellant told
Billy about the affair, he and Billy pushed each other.  Billy then retrieved a .30‑30 rifle and
began loading it.  Appellant called the
police, who confiscated the rifle. 
Later, Billy filed assault charges against appellant.  On another occasion, Billy approached
appellant and started pushing him.  In
one of appellant=s
statements, he claimed Billy was unsuccessfully trying to get appellant to
fight back so he could again press assault charges.   

Shortly
before the shooting, appellant decided to extricate himself from this situation
and leave Texas by himself.  The day of
the shooting, appellant covertly took a .22 caliber pistol from a neighbor=s house, went home and put it on the
television by the front door.  Appellant
started drinking vodka, and then called Billy to tell him he was leaving town,
but that he wanted Billy to come over so they could talk.  Appellant stated he just wanted to Ascare@
Billy.  In his statements to police,
appellant gave three similar versions of what happened when appellant opened
the door for Billy:

1.         When he got
there I opened the door & he hit me in the face with something. I grabbed
the gun off of the television.  I was
probably a couple of feet from him and the gun went off.  

 

2.         When Billy
hit me, I grabbed the gun and turned around towards him and it went off.  It went off twice.  I wasn=t
thinking.  When I picked up the gun,
Billy was coming at me and the gun went off.

 

3.         As soon as he
stepped [in] he hit me.  I turned around
and grabbed the gun.  I guess he seen the
gun.  He started going backwards toward
the chair.  It went off twice.  . . . 
It was one fast motion.  I was
right by the door and t.v.  I can=t recollect seeing his hands.  Once I got hit it happened so fast.

 








                                                                             II

 

Self
Defense

 

Appellant
claims that the court erred in refusing his requested self‑defense charge
because the following evidence raised that issue:  (1) Billy and appellant had previous violent
altercations, (2) Billy immediately began assaulting him with his fists and an
unidentified object when he opened the door, and (3) appellant was in his home.









A
person is justified in using force against another when and to the degree he
reasonably believes the force is immediately necessary to protect himself
against the other=s use or
attempted use of unlawful force.  Tex.Pen.Code Ann. ' 9.31(a)(Vernon Supp. 2003).  A person is justified in using deadly force
against another:  (1) if he would be
justified in using force against the other under Section 9.31, (2) if a
reasonable person in the actor=s
situation would not have retreated, and (3) when and to the degree he
reasonably believes the deadly force is immediately necessary to protect
himself against the other=s
use or attempted use of unlawful deadly force. 
Tex.Pen.Code Ann. ' 9.32(a).[1]  A trial court must give a jury instruction on
a defensive theory raised by the evidence regardless of whether such evidence
is strong, feeble, impeached, or contradicted, and even if the trial court is
of the opinion that the testimony is not entitled to belief.  Brown v. State, 955 S.W.2d 276, 279
(Tex.Crim.App. 1997).  In order to be
entitled to an instruction on the use of deadly force in self‑defense,
the defendant must produce some evidence on each of the three elements of
Section 9.32.  Henderson v. State,
906 S.W.2d 589, 594‑95 (Tex.App.-‑El Paso 1995, pet. ref=d). 
If the issue is raised by any party, refusal to submit the requested
instruction is an abuse of discretion.  Id.  But if the evidence fails to raise a
defensive issue, the trial court commits no error in refusing a request.  Id.








We
need only address the third element because the evidence did not show (1) that
Billy used deadly force against appellant, and (2) that appellant reasonably
believed his use of deadly force was immediately necessary to protect himself
Billy=s use of
force.  Each account given by appellant
simply states Billy delivered a single blow with an unidentified object.  Appellant presents no evidence that this
object was any more capable of causing injury than a fist, and the
circumstances leave us no reason to infer otherwise.  Further, appellant provided no evidence of
his subjective belief of any real or apparent danger of deadly force present at
the time of the shooting. He did not show why he believed he immediately needed
to use deadly force to protect himself, nor why he thought Billy had inflicted
or was about to inflict deadly force.[2]  Therefore, viewing the totality of the
evidence in the light most favorable to appellant, we hold that Billy=s single blow with an unidentified
object did not constitute deadly force.  See
Tex.Pen.Code Ann. '' 1.07(a)(46), 9.01(3); see
also Ogas v. State, 655 S.W.2d 322, 324 (Tex.App.‑‑Amarillo
1983, no pet.)(holding a blow to the face with an open or closed hand to the
face does not justify deadly force); Molitor v. State, 827 S.W.2d 512
(Tex.App.‑‑Austin 1992), rev=d
on other grounds and abated, 862 S.W.2d 615 (Tex.Crim.App. 1993)(blow to
the head not deadly force); cf. Rucker v. State, 599 S.W.2d 581, 582-83
(Tex.Crim.App. 1979)(holding that numerous blows with fist, causing black eyes,
cuts and bruises, did not constitute Aserious
bodily injury@).  Further, we hold that the evidence did not
show that appellant held a reasonable belief that the use of deadly force
against Billy was immediately necessary to avoid imminent seriously bodily
injury or death.  See Tex.Pen.Code Ann. ' 9.32(a). Accordingly, appellant was
not entitled to a charge on self‑defense. 
We overrule this issue.

Lesser-Included Offense

In
his second issue, appellant argues the court erred in refusing to charge the
jury on the lesser-included offense of aggravated assault.[3]  To determine whether appellant was entitled
to a jury charge on the lesser‑included offense, we apply a traditional
two‑prong test.  Bignall v.
State, 887 S.W.2d 21, 23 (Tex.Crim.App. 1994); Ramirez v. State, 976
S.W.2d 219, 226‑27 (Tex.App.--El Paso 1998, pet. ref=d). 
First, the lesser‑included offense must be included within the
proof necessary to establish the offense charged.  Bignall, 887 S.W.2d at 23.  Second, some evidence must exist in the
record that would permit a jury rationally to find that if the defendant is
guilty, he is guilty only of the lesser offense.  Ramirez, 976 S.W.2d at 227.  The credibility of the evidence and whether
it conflicts with other evidence or is controverted may not be considered in
making the determination of whether the lesser‑included offense should be
given.  Gadsden v. State, 915
S.W.2d 620, 622 (Tex.App.-‑El Paso 1996, no pet.).  Regardless of its strength or weakness, if
any evidence raises the issue that the defendant was guilty only of the lesser
offense, then the charge must be given.  Saunders
v. State, 840 S.W.2d 390, 391 (Tex.Crim.App. 1992).  However, the evidence must establish the
lesser‑included offense as a valid, rational alternative to the charged
offense.  Wesbrook v. State, 29
S.W.3d 103, 113 (Tex.Crim.App. 2000).








The
state does not dispute that aggravated assault can be a lesser-included offense
of murder; thus the first prong is satisfied. 
See Cardenas v. State, 30 S.W.3d 384, 392 (Tex.Crim.App.
2000).  Regarding the second prong,
appellant claims that his statements that the gun Awent
off@ shows his conduct was Aaccidental@
or Aunintentional.@  Accordingly, he argues, the jury should have
been permitted to consider aggravated assault. 
We first note that the offense of aggravated assault only implicates
intentional, knowing, and reckless mental states.  Tex.Pen.Code
Ann. ''
22.01(a)(1), 22.02(a)(aggravated assault committed by intentionally, knowingly,
or recklessly causing serious bodily injury to another).  We assume, then, that appellant is referring
to the lowest standard of culpability, recklessness, when he asserts his
conduct was accidental or unintentional.

The
penal code states that AA
person acts recklessly, or is reckless, with respect to circumstances
surrounding his conduct or the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the
circumstances exist or the result will occur.@  Tex.Pen.Code
Ann. '
6.03(c).  Here, appellant does not give
any indication that he acted with conscious disregard of the risks
involved in picking up the pistol, pointing it in Billy=s
direction, and firing it.  If anything,
his stating that he Awasn=t thinking@
and that the gun Awent off@ indicates he acted without any
culpable mindset at all, thus undermining any reasonable inference that he was
consciously aware of any risks associated with his actions.  See Gonzales v. State, 632 S.W.2d 899,
903 (Tex.App.-‑Dallas 1982, pet. ref=d)(holding
that reckless conduct not raised where there was no evidence defendant
consciously disregarded an unjustifiable risk without intent to kill).  Nor is there any other evidence in the record
from which a jury could infer that appellant acted under the recklessness
standard.  Without such evidence, a
finding of reckless conduct, and thus a charge of aggravated assault, is not a
viable, rational alternative to the charged offense.  The court did not err in refusing to charge
aggravated assault.  We overrule this
issue.








Autopsy
Photos








In
his final issue, appellant complains that the trial court erroneously admitted
15 Ainflammatory@
autopsy photos showing various depictions of complainant and his wounds.  Admissibility of photographs is within the
sound discretion of the trial judge.  Jones
v. State, 843 S.W.2d 487, 500 (Tex.Crim.App. 1992).  Rule 403 provides that, although relevant,
evidence may be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or misleading the
jury.  Tex.R.Evid.
403; Sonnier v. State, 913 S.W.2d 511, 519 (Tex.Crim.App. 1995).  In determining whether the inflammatory
nature outweighs its probative value, the trial court should consider Athe inherent tendency that some
evidence may have to encourage [the] resolution of material issues on an
inappropriate basis and should balance carefully against it the host of factors
affecting probativeness, including relative weight of the evidence and the
degree to which its proponent might be disadvantaged without it.@ 
Fuller v. State, 829 S.W.2d 191, 206 (Tex.Crim.App. 1992).  Relevant factors in ascertaining the
admissibility of photographs under Rule 403 include the number of exhibits
offered, their gruesomeness, detail, size, whether they are black and white or
color, whether they are close‑up, whether the body is naked or clothed,
the availability of other means of proof, and other circumstances unique to the
individual case.  Santellan v. State,
939 S.W.2d 155, 172 (Tex.Crim.App. 1997). 
Where pictorial evidence will help the jury understand verbal testimony,
such as the technical language used by a medical doctor in describing the
injuries sustained by a victim of a crime, a trial court does not abuse its
discretion in admitting these photographs. 
Harris v. State, 661 S.W.2d 106, 107 (Tex.Crim.App. 1983).  Generally, autopsy photographs are admissible
unless they depict mutilations of the victim due to the autopsy itself.  See Rojas v. State, 986 S.W.2d 241,
249 (Tex.Crim.App. 1998).  Photographs
that depict the nature, location, and extent of a wound have generally been
deemed probative enough to outweigh any prejudicial effects such photos may
have on the jury, and these types of photographs are therefore properly
admissible.  See Etheridge v. State,
903 S.W.2d 1, 21 (Tex.Crim.App. 1994). Appellant
contends the photos were admitted to prove the fatal nature of complainant=s wounds, an issue not contested at
trial.  Thus, he says, the combined
prejudicial effect of these Agruesome@ photos substantially outweighed their
probative value.  The state responds, and
we agree, that the photos were probative of matters like bullet trajectory,
location of wounds, and range of fire, thus enabling the jury to see how the
physical evidence and circumstances of the shooting compared to appellant=s version of the facts.  The photos also complemented the medical
examiner=s
testimony.  See Harris, 661 S.W.2d
at 107.  Further, the state points out
that some of the photos were Aas-is,@ which depicted no more than the
reality of the wounds inflicted.  See
Rojas, 986 S.W.2d at 249.  Although
the photographs of complainant are disturbing, as would be almost any photos of
a shooting victim, the wounds are relatively small and none of the photos are
particularly graphic or gruesome.[4]  Further, they do not appear to reflect any
more than the crime committed.  See
Chamberlain v. State, 998 S.W.2d 230, 237 (Tex.Crim.App. 1999).  In view of the relevant factors, then, we
find that the prejudicial effect of the disputed photographs did not
substantially outweigh their probative value. 
Accordingly, we find the trial court properly exercised its discretion
in admitting the photographs. Appellant=s
final issue is overruled.

The
judgment of the trial court is affirmed.

 

 

 








January
30, 2003

                                                                        


DON
WITTIG, Justice

Before
Panel No. 5

McClure,
Chew, and Wittig, JJ.

(Wittig,
J., sitting by assignment)

 

(Do
Not Publish)











[1]  ADeadly force@ means Aforce that is intended or known by the actor to cause,
or in the manner of its use or intended use is capable of causing, death or
serious bodily injury.@  Tex.Pen.Code Ann. ' 9.01(3). 

                                                                                                        

ASerious bodily injury@ is
defined as any injury that Acreates a substantial risk of death or that causes
death, serious permanent disfigurement, or protracted loss or impairment of the
function of any bodily member or organ.@  Tex.Pen.Code
Ann. ' 1.07(a)(46)(Vernon 1994).





[2]  Additionally,
notwithstanding their earlier confrontations, according to Alice Musial=s uncontradicted testimony, Billy Acouldn=t beat anybody up@ and was
not a physical threat to appellant. 
Moreover, appellant admitted that he had called Billy to the house for
the purpose of scaring him.





[3]  The court did
charge the jury on the lesser-included offense of manslaughter.  





[4]  We note that
the photos provided with the record are in black and white.