# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00449-CR

**Homer Valadez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-09-300314, HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Homer Valadez was convicted by a jury of aggravated assault causing serious bodily injury. *See* Tex. Penal Code § 22.02(1). The jury assessed punishment at twenty years' imprisonment. On appeal, Valadez asserts that the trial court erred in failing to instruct the jury on (1) the lesser-included offense of misdemeanor assault and (2) the law of self-defense. We will affirm the judgment of the trial court.

## BACKGROUND

On January 24, 2009, at around 2:00 in the morning, Robert Rocha, the complainant in this case, was walking his wife Christina Arguello to her car in downtown Austin. The couple was walking through a crowd when they heard two individuals or groups of individuals exchanging profane insults. According to Rocha, he turned in the direction of one of the groups and saw Valadez and "three or four other guys that were standing around."

Rocha testified that Valadez was visibly upset; he recalled that Valadez was "bouncing up and down" and yelling profane statements at an unidentified individual. During this time, Rocha and Valadez made eye contact, and although Rocha attempted to look away, Valadez immediately began yelling at Rocha. Valadez and his friends began walking toward Rocha and Arguello. Rocha told them that he did not know the person they were yelling at, and he and Arguello continued to try and walk away. According to Rocha, Arguello turned to face Valadez as he approached and said "Just stop, we're not looking for any trouble."

Before Arguello could finish her sentence, Valadez shoved her to the ground and punched Rocha, hitting him in the shoulder. Rocha responded by punching Valadez in the face, and Valadez grabbed him by the shirt. Rocha recalled that he tried to back away, but when he stepped down the "real steep cement steps," Valadez put his weight on Rocha and Rocha "went straight to the ground" and heard his leg "snap." Valadez and his group of friends began punching and kicking Rocha while he was on the ground. Arguello tried to pull Valadez and the others off of her husband, but Valadez turned around and punched Arguello so hard that she lost consciousness. The assailants then fled to their vehicle that was parked in a nearby garage, but they were subsequently arrested by officers with the Austin Police Department.

Valadez was indicted for aggravated assault. At trial, the State called Rocha to testify about the events of the assault as outlined above. The State also called Arguello, who confirmed her husband's account of the assault, as well as three bystanders who testified that they observed a group of assailants led by a Hispanic male beating a man on the ground.[1] The State also called three police

---

[1] The bystanders used various words to describe the assault, with one describing it as a "bludgeoning" and another testifying that it was "animalistic." All three bystanders testified that they observed the assault occurring at the bottom of steep stairs and that the Hispanic male who was the primary aggressor was both punching and kicking the man on the ground and punched the woman who was trying to stop the assault.

2

officers who testified about their response to the altercation and subsequent arrest of Valadez and his friends. Finally, the State called Dr. Drake Borer, Rocha's treating physician. Dr. Borer testified that Rocha suffered a spiral fracture in his leg, on which Dr. Borer performed surgery, installing a metal plate and screws. Dr. Borer further testified that without the surgery, Rocha's leg would never have healed properly and would have resulted in Rocha being permanently impaired. Dr. Borer also testified that Rocha suffered several fractures to his hand, which also required surgical repair to prevent permanent impairment.

Valadez testified in his own defense, during which he gave a substantially different account of the events. Valadez testified that one of his friends was arguing with an unidentified stranger in the crowd when Rocha began asking if they were insulting him. Valadez stated that he told Rocha that they were not arguing with him, and that when Valadez walked away, Rocha came up from behind him and hit him in the face, knocking Valadez to the ground. Valadez claimed that at this point his friends fought Rocha, knocking him to the ground before punching and kicking him repeatedly. Valadez claimed that he never took part in the fight and never threw a single punch. Finally, Valadez claimed that his friends were initially defending him, but that "maybe it got out of, you know, control," and he insisted that his friends stop attacking Rocha so that Valadez could go to the hospital.

At the charging conference, Valadez's counsel requested a jury instruction on the lesser-included offense of misdemeanor assault, which the trial court denied. *See* Tex. Penal Code § 22.01 (defining assault). Valadez's counsel also requested a jury instruction on the law of self-defense, asserting that because the case involved the law of parties "the jury can believe or disbelieve

3

. . . whether or not self-defense could have been used by others to defend Mr. Valadez." *See id.* §§ 7.02 (describing when person is criminally responsible for conduct of another), 9.31 (describing elements of self-defense). The trial court denied the request.

Following summations, the jury convicted Valadez of aggravated assault causing serious bodily injury. Following a punishment hearing, the jury assessed punishment at twenty years' confinement. This appeal followed.

## DISCUSSION

On appeal, Valadez asserts that the trial court erred in denying his requested jury instructions on (1) the lesser-included offense of misdemeanor assault and (2) the law of self-defense. We will review these two appellate issues separately.

### Lesser-included offense

In his first appellate issue, Valadez asserts that the trial court erred in denying his request for an instruction on the lesser-included offense of misdemeanor assault causing bodily injury, often referred to as "simple assault." *See id.* § 22.01. Specifically, Valadez argues that he was entitled to the lesser-included-offense instruction because the jury could have reasonably concluded that he caused only bodily injury to Rocha, rather than serious bodily injury. Thus, according to Valadez, the jury could have reasonably determined that he was guilty only of simple assault, rather than aggravated assault. *See id.* §§ 22.01(a)(1), .02(a)(1).

We review a trial court's ruling on a request for a lesser-included-offense instruction for an abuse of discretion. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004).

4

In order to show that he was entitled to a lesser-included-offense instruction, Valadez must satisfy the two-prong *Aguilar/Rousseau* test. *See Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005); *see also Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985). The first prong "requires the court to determine whether the lesser offense actually is a lesser-included offense of the offense charged." *Hall*, 158 S.W.3d at 473 (internal citations omitted); *see also* Tex. Code Crim. Proc. art. 37.09(1) ("An offense is a lesser-included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged . . . ."). The second prong "asks whether the record contains some evidence that would permit a rational jury to find that the defendant is guilty *only* of the lesser-included offense." *Hall*, 158 S.W.3d at 473 (internal citations omitted).

In this case, it is undisputed that the first prong of the *Aguilar/Rousseau* test is satisfied because simple assault is a lesser-included offense of the aggravated assault alleged. *See Irving v. State*, 176 S.W.3d 842, 845–46 (Tex. Crim. App. 2005) (noting that simple assault is lesser included offense of aggravated assault when conduct constituting simple assault is same conduct alleged in aggravated assault). Therefore, Valadez was entitled to a lesser-included-offense instruction if, based on the record, the jury could have rationally concluded that Valadez was guilty of assault but not of causing serious bodily injury. In making this determination, we may not consider the "credibility of the evidence and whether it conflicts with other evidence or is controverted." *Young v. State*, 283 S.W.3d 854, 875–76 (Tex. Crim. App. 2009). However, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider . . . ." *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

5

In this case, there is no evidence in the record from which the jury could have reasonably concluded that Rocha suffered only bodily injury, rather than serious bodily injury. *See* Tex. Penal Code §§ 1.07(8) (defining bodily injury), (46) (defining serious bodily injury as bodily injury that "creates a substantial risk of . . . protracted loss or impairment of the function of any bodily member or organ"). With respect to Rocha's leg alone, Dr. Borer testified that Rocha suffered a radial fracture in several locations along his leg, and that without surgery, even if Rocha's leg did heal, it "would not have healed it in an appropriate alignment. So [Rocha] would have had difficulty walking and probably had some chronic pain, problems like that." *See id.* § 1.07(46); *Stuhler v. State*, 218 S.W.3d 706, 714 (Tex. Crim. App. 2007) (stating that risk of causing permanent impairment is determined based on injury "as it was inflicted, not after the effects had been ameliorated or exacerbated by other actors such as medical treatment") (internal citations omitted). There is nothing in the record to contradict Dr. Borer's testimony that without surgery, Rocha would have been permanently disabled to some extent. Therefore, the jury could not rationally conclude that Rocha did not suffer serious bodily injury that caused protracted loss or impairment of the function of his leg. *See* Tex. Penal Code §1.07(46); *Bignall*, 887 S.W.2d at 24 (noting that defendant not entitled to lesser-included-offense instruction merely because jury could disbelieve critical evidence).

On appeal, Valadez asserts that even though the injuries to Rocha's leg may constitute serious bodily injury, the jury could nevertheless conclude that Valadez did not cause those injuries. Specifically, Valadez asserts that the record indicates that Rocha broke his leg when he stepped backward and fell down the stairs, and therefore "[a] jury could rationally believe that Rocha's

broken leg was caused by Rocha and not by Appellant." This argument relies solely on Rocha's and Arguello's account of the assault, as Valadez testified that the assault did not take place near the stairs and he "did not see anyone fall down the stairs, and I was not—and I never did fall down the stairs that day."

Rocha testified that after Valadez punched him, Rocha stepped backward onto the stairs, at which time Valadez put his weight on Rocha, causing Rocha to fall down the stairs. There is nothing in the record to indicate Rocha would have fallen down the stairs had Valadez and the other assailants not committed assault. Therefore, even if the jury believed that Rocha's leg was injured in the fall, there is nothing in the record that could rationally support a finding that Valadez and the other assailants did not cause that fall and the resulting injury. *See Ferrel v. State*, 55 S.W.3d 586, 590–91 (Tex. Crim. App. 2001) (holding defendant not entitled to lesser-included-offense instruction for assault where initial assault caused victim to fall, hit his head on ground, and die).

Thus, the jury could not rationally find that Valadez was guilty only of simple assault because nothing in the record would support a finding that Valadez only caused bodily injury, but not serious bodily injury. *See Hall*, 158 S.W.3d at 473. Given that Valadez cannot satisfy the second prong of the *Aguilar/Rousseau* test, we conclude that the trial court did not abuse its discretion in denying Valadez's request for a lesser-included-offense instruction for simple assault. *See id.* We overrule Valadez's first appellate issue.

**Self-defense**

In his second issue on appeal, Valadez claims that he was entitled to an instruction on the law of self-defense.[2] *See* Tex. Penal Code § 9.31(a) (defining self-defense). Valadez does not claim that the jury could have found that he acted in self-defense, but rather asserts that the jury could have reasonably concluded that the other assailants fought Rocha in self-defense. Given that the jury was instructed that Valadez could be criminally liable for the conduct of the other assailants, Valadez asserts that he was entitled to rely on any defense that could have applied to the other assailants, including self-defense. *See* Tex. Penal Code § 7.02(a) (explaining criminal liability for conduct of another); *see also Misner v. State*, 610 S.W.2d 502 (Tex. Crim. App. 1981) (holding defendant convicted under party liability was entitled to self-defense instruction if principal actor would be entitled to self-defense instruction); *Schiffert v. State*, 257 S.W.3d 6, 13–14 (Tex. App.—Fort Worth 2008, pet. dism'd).

A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether the evidence is weak or strong, unimpeached or contradicted, regardless of the trial court's opinion of the credibility of the defense. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). The purpose of this rule is to ensure that the jury, not the trial court, decides the relative credibility of the evidence. *Id.* Defensive issues may be raised by the testimony of any witness. *VanBrackle*

---

[2] Although Valadez refers to this requested instruction as a "lesser included charge of self defense," self-defense is actually a stand-alone defense in which the defendant asserts that his use of force was justified to protect himself or a third person from the unlawful use of force by another. *See* Tex. Penal Code § 9.31(a); *Alonzo v. State*, 353 S.W.3d 778, 782–83 (Tex. Crim. App. 2011) (explaining self-defense as justification which, if proven, would entitle defendant to acquittal of all charges).

8

*v. State*, 179 S.W.3d 708, 712–13 (Tex. App.—Austin 2005, no pet.). In determining whether a defensive theory was raised, the evidence is viewed in the light most favorable to the defendant. *Id.*

Valadez consistently testified that he never hit Rocha, and therefore he cannot claim that he acted in self-defense. *See id.* ("[T]he defendant must 'admit' violating the statute under which he is being tried, then offer a statutory justification for his otherwise criminal conduct.") (quoting *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999)). However, Valadez asserts that (1) the jury could have reasonably concluded that he was liable as a party to the other assailants' actions, (2) the jury could have reasonably concluded that the other assailants acted in self-defense, and therefore (3) Valadez was entitled to a self-defense instruction because it is a valid defense which could apply to the other assailants. *See Schiffert*, 257 S.W.3d at 13–14.

As discussed above, the record clearly establishes that Rocha suffered serious bodily injury. *See Stuhler*, 218 S.W.3d at 714. To justify the infliction of serious bodily injury, a defendant must show that he was justified in using deadly force. Tex. Penal Code § 9.01 (defining deadly force as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury."); *Ferrel*, 55 S.W.3d at 591–92 (noting that where assault causes serious bodily injury, defendant must show was justified in using deadly force). Therefore, even assuming Rocha was the initial aggressor, the jury would have to believe that the other assailants were justified in using "deadly force" to defend themselves from Rocha.

"[A] person is justified in using deadly force in self-defense if he reasonably believes that deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force, and if a reasonable person in his situation would not have retreated."

9

*VanBrackle*, 179 S.W.3d at 712. Valadez did not testify, and there is nothing in the record to suggest, that Rocha attacked or threatened to attack the other assailants. Therefore, there is no evidence in the record from which the jury could rationally conclude that the other assailants were justified in using deadly force to protect themselves from Rocha. *See id.*

On appeal, Valadez also asserts that he "testified that his friends were protecting him and defending him from the unwarranted attack he suffered." Although Valadez refers to the other assailants' conduct as self-defense, that conduct, if true, would more accurately be construed as defense of a third person.[3] *See* Tex. Penal Code § 9.33 (noting that person is "justified in using force or deadly force against another to protect third person."); *see also Barrios v. State*, 389 S.W.3d 382, 393–95 (Tex. App.—Texarkana 2012, pet. ref'd) (concluding defendant entitled to defense-of-third-person instruction but not self-defense instruction). However, even if we take Valadez's argument to mean that the trial court erred in failing to give a defense-of-third-person instruction, we would nevertheless conclude that claim is without merit.

As we have explained, the record clearly establishes that Rocha suffered serious bodily injury during the assault, and therefore the other assailants' attack on Rocha constituted use

---

[3] The State asserts that because Valadez consistently requested an instruction on self-defense rather than defense of a third person, Valadez has waived this complaint for appeal. *See Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007) (concluding request for self-defense instruction based on "facts of this case" insufficient to alert trial court of request for defense-of-third-person instruction). Although Valadez misidentified his request as an instruction on self-defense, he explained to the trial court that there was conflicting evidence about "whether or not self-defense could have been used by others to defend Mr. Valadez." Therefore, we assume without deciding that the substance of Valadez's request was sufficient to alert the trial court that Valadez was requesting an instruction on defense of a third person. *See id.* ("'Magic words' are not required; a complaint will be preserved if the substance of the complaint is conveyed to the trial court.").

of deadly force. As with self-defense, an accused is justified in using deadly force to defend a third person if the accused reasonably believes that an actor is threatening unlawful deadly force against the third person and the accused's use of deadly force is immediately necessary to protect the third person. *See* Tex. Penal Code § 9.33. To the extent the record indicates Rocha punched Valadez, that punch alone could not reasonably be perceived as deadly force. *See Ogas v. State*, 655 S.W.2d 322, 324 (Tex. App.—Amarillo 1983, no pet.) ("A blow to the face, whether made with an open hand or closed hand, did not constitute the use or attempted use of deadly force."); *see also Starks v. State*, 127 S.W.3d 127, 132–33 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). Furthermore, nothing in the record indicates that Rocha orally threatened Valadez with deadly force or exhibited a weapon. *Cf. Hamel v. State*, 916 S.W.2d 491, 493–94 (Tex. Crim. App. 1996) (concluding defendant entitled to self-defense and defense-of-third-person instruction where evidence indicated victim threatened to get gun to shoot defendant and defendant's father). Therefore, the jury could not rationally conclude that the other assailants were justified in using deadly force against Rocha to protect Valadez. *See Schiffert*, 257 S.W.3d at 14 (noting victim not carrying any weapon or making any threat that would justify use of deadly force).

Thus, even under a party-theory of liability, the record does not support an instruction on either self-defense or defense of a third person. We cannot conclude that the trial court erred in failing to instruct the jury on either of these defenses. We overrule Valadez's second appellate issue.

## CONCLUSION

Having overruled Valadez's two issues on appeal, we affirm the judgment of the trial court.

11

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   July 2, 2013

Do Not Publish