**Fines Will BRAY**

v.

**The STATE of Texas.**

**No. 05–81–00644–CR.**

Court of Appeals of Texas, Dallas.

May 28, 1982.

Sam Hudson, Dallas, for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, for appellee.

Before TED Z. ROBERTSON, CARVER and WHITHAM, JJ.

CARVER, Justice.

Fines Will Bray was convicted of murder and sentenced to forty years by a jury. We affirm since we hold that: (1) the evidence did not raise self-defense and the requested charge thereon was properly refused; (2) voluntary intoxication, absent temporary insanity, does not mitigate the penalty for an offense and the requested charge thereon was properly refused; (3) the prosecutor's argument, that acquittal would risk another killing, was a proper plea for law enforcement; (4) the prosecutor's argument, that any justification for the killing, properly raised by the evidence, would have been submitted in the court's charge for the jury's decisions, was not improper as imputing any particular belief to the court; and (5) the prosecutor's argument, that the accused was beyond rehabilitation, was an invited response to the accused's plea for probation, as well as a proper plea for law enforcement.

The record reflects that Bray shot and killed Harold Gaut with a .410 shotgun. The only testimony in the record concerning the events prior to the shooting, and the shooting itself, came from Bray. Bray testified that, on the day of the shooting, he and Gaut were watching football on television at Gaut's house and argued about a penalty call. Bray claimed that Gaut hit him with a stick and ordered him to "get up, go home, go home." Bray testified that he "just got up and went on to the house," which was the second door down from Gaut's house. When asked what happened after he went home, Bray testified that:

"I went home and I sat on my porch. I sat on my porch for a little while and stood there for a long time. And after awhile, Harold came by and he went to his house. He come out of his house, and he come out of his house talking—I don't know what he was saying. He wasn't talking loud enough for me to hear. And he got around to come around the house and come around to his station wagon, and he was walking around there with his hand behind, so when he come around that way, I said—well, I didn't try to shoot to hit him. I just tried to shoot to scare him. I just shot to scare him, to turn around—where he would turn around. I just stepped off my porch and shot him and just turned around and walked on back in the house. I didn't want to walk on back in the house and so I said, "Why didn't you come in my house," and here comes the police."

■ Bray first complains that this evidence raised, but the trial court refused to submit, his self-defense justification for shooting Gaut. We disagree that the evidence raised self-defense. Bray's claim of self-defense must initially rest upon § 9.31 Tex.Penal Code (Vernon 1974) which provides, in pertinent part that:

> ... a person is justified in using force against another where and to the degree he reasonably believes the force is *immediately* necessary to protect himself against the other's *use or attempted use of unlawful force.* [emphasis added]

Bray's testimony fails to describe any use, or attempted use, of unlawful force by Gaut. To the contrary, Bray testified that, subsequent to their dispute over the football penalty, Gaut walked past Bray's house, with Bray on the front porch, and neither reacted to the other's proximity. Gaut was shot after he left his home and walked, a second time, toward Bray's house. Since the first walk by Gaut toward, and past, Bray's house had been peaceful, a second walk by Gaut, unaccompanied by words, or acts without words, on Gaut's part, could not be interpreted as a "use or attempted use of unlawful force." *See An-*

*drus v. State,* 73 Tex.Cr.R. 329, 165 S.W. 189 (1914). Likewise, Bray's testimony fails to describe how the shot at Gaut was "immediately" necessary to protect Bray from Gaut's walking toward Bray's house. If merely walking toward Bray's house was some threat to Bray, it would only be so in conjunction with the earlier football penalty dispute and Bray's belief that such dispute was not at an end. However, since Gaut had already walked by once and had remained peaceable, there could be little likelihood of a renewal of the football penalty dispute. Nowhere in Bray's testimony does he articulate any apprehension in his own mind that Gaut's walk toward Bray's house constituted either a renewal of the earlier dispute over the football penalty, or the commencement of some new use, or attempted use, of unlawful force by Gaut. *See Hudson v. State,* 40 Tex. 12 (1874). Since Bray failed to articulate any apprehension and since Gaut's *second* walk toward Bray's house (the first walk being peaceable) did not, in itself, raise any inference that Gaut was not peaceable, we conclude that self-defense under Sec. 9.31 was not raised by the evidence.

■ Additionally, Sec. 9.31 specifically provides in subparagraph (d) that "The use of deadly force is not justified under the subchapter except as provided in Sections 9.32, 9.33, and 9.34 of this code." The latter sections 9.33 and 9.34 relate, respectively, to the defense of third persons and the prevention of one injuring himself and are inapplicable to our facts. Section 9.32 requires, in order to justify the use of "deadly force," (1) that the use of any force must be justified under Section 9.31; (2) that "a reasonable person in the actor's situation would *not* have retreated" [emphasis added], and (3) that the actor "reasonably believes that the deadly force is immediately necessary ... to protect himself against the other's use or attempted use of unlawful deadly force." Even if it were conceded that the requirements of Section 9.31 had been shown, there is nothing in the evidence to show that a reasonable person in Bray's circumstances would not have retreated as set out in Section 9.32. Bray, in fact, did first retreat

from his porch inside his house where his shotgun came into his hands. It was from this reasonable and safe retreat that Bray emerged to attack Gaut while Gaut was not yet near Bray's premises. The record reflects that it was reasonable for Bray to retreat but unreasonable not to maintain his retreat, rather than making his attack with deadly force upon Gaut. As to the third element of Sec. 9.32, there is no evidence in the record that Gaut used or attempted to use deadly force so as to justify Bray's deadly response. Bray does not articulate any apprehension that Gaut was about to employ deadly force and neither the acts, nor words without acts, of Gaut can be said to threaten deadly force. Gaut's action concurrent with the shooting was on the force of walking, moreover, the only force theretofore employed by Gaut was a stick whose blow only raised a knot on Bray's head. We conclude that, since Bray employed deadly force to shoot and kill Gaut, a charge on self-defense as justification was only required if the evidence raised the elements set out in both Section 9.31 and Section 9.32. We hold that the evidence fails to raise these elements and that the trial court correctly refused Bray's requested charge submitting self-defense.

■ Bray also complains that the trial court refused to charge the jury that they could consider Bray's voluntary intoxication at the time of the shooting as a mitigating circumstance in fixing punishment. Bray relies upon Section 8.04 Tex.Penal Code (Vernon 1974) which provides:

a. Voluntary intoxication does not constitute a defense to the commission of crime.

b. Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

c. When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in accordance with the provisions of this section.

d. For purposes of this section "intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

Further, Bray relies upon the testimony of other witnesses who described Bray, on the day of the shooting, as "drunk;" "didn't act as he usually acted on that day;" and "he seemed to be intoxicated." Neither Bray, nor any witness, claimed that Bray (1) did not know his conduct at the time of the shooting was wrong; or (2) that Bray was incapable of conforming his conduct to the requirements of the law he violated, both elements being required to support "temporary insanity" (whether caused by intoxication or otherwise) in mitigation of Bray's penalty. *Hart v. State*, 537 S.W.2d 21 (Tex. Crim.App.1976). Consequently, the trial court correctly refused to charge the jury as requested by Bray.

■ Bray additionally complains that the prosecutor improperly badgered the jury to deny Bray probation by arguing that, "If you let him out walking the streets where he can be drinking some more liquor and having access to another gun and killing another innocent human being, then you give him probation." We disagree since the argument was consistent with the evidence before the jury and sought, upon that evidence, the punishment provided by law. Similar arguments were approved in *Walthall v. State*, 594 S.W.2d 74 (Tex.Cr.App. 1980) and *Bowman v. State*, 446 S.W.2d 320 (Tex.Cr.App.1969), no error is shown.

■ Bray further complains that the prosecutor improperly inferred to the jury that the judge had found no justification for Bray's conduct, such as self-defense, or he would have put any justification in the charge. The particular argument of the prosecutor was properly confined to whether the evidence raised any justification, and, if it had, such evidence would cause the court to have included the justification in the charge. This argument, so confined, was approved in *Dunbar v. State*, 551 S.W.2d 382 (Tex.Cr.App.1977) and *McClory v. State*, 510 S.W.2d 932 (Tex.Cr.App.1974) and no error is shown.

Lastly, Bray complains that the prosecutor improperly argued to the jury that Bray was "beyond rehabilitation" when there was "no evidence to support such a conclusion." The record reflects that Bray's argument, preceeding the prosecution's argument, urged the jury:

But so far as punishment is concerned what good will it do to send him down to the pen in the condition that he's in, fifty-three years of age, and not allow him to be able to show you and society that he is deserving of probation?

Bray's plea was plainly for probation during which Bray was, supposedly, to demonstrate self-rehabilitation without the necessity of any confinement. The prosecutor's argument responded that a fifty-three year old man who killed without provocation or remorse was beyond self-rehabilitation and needed confinement. We find the prosecutor's argument was a fair response, as well as a reasonable deduction from the evidence, and no error is shown. *Holloway v. State,* 525 S.W.2d 165 (Tex.Cr.App.1975).

Affirmed.