Rudy RIOS, Appellant,

v.

The STATE of Texas, State.

No. 2–83–258–CR.

Court of Appeals of Texas, Fort Worth.

Dec. 7, 1983.

Discretionary Review Refused March 14, 1984.

Lambros, Clay & Justice, and Chrysanthe A. Lambros and Sally Justice, San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty., and Edward F. Shaughnessy, Asst. Dist. Atty., San Antonio, for the State.

Before HUGHES, ASHWORTH and BURDOCK, JJ.

## OPINION

HUGHES, Justice.

Rudy Rios was convicted of the offense of murder. The jury assessed his punishment at confinement in the Texas Department of Corrections for life.

We affirm.

On March 20, 1982, at 1:50 a.m., Nicholas Diaz was sitting on his motorcycle on the San Antonio College parking lot outside Dr. Feelgood's bar. Diaz saw a crowd gather on the lot; then disperse; then gather again. He then heard three shots and saw two men run to a white truck parked next to his motorcycle. The one who got into the driver's seat of the truck held a shotgun. Diaz saw nothing in the hand of the man who got into the other side of the truck. Diaz knew neither of the two.

The truck was driven out of the lot, over a sidewalk and curb, and through a red traffic light in an easterly direction. Diaz got the truck license number and reported same to the police. He also testified that he saw the body of Abel Zapata lying on the lot with bullet wounds in his leg and forehead. Diaz testified that he saw a gun at the scene in the possession of a police-

man. Diaz also identified appellant from a photographic lineup as the man on the passenger side of the truck, and his brother, Tony, as the driver of the white truck.

The owner of the white pickup, Fred Mendoza, testified that he loaned it to Tony Rios on March 19, 1982 and that it was returned at 3:00 or 4:00 the next morning. Mendoza told the police on March 24th that his truck had been stolen on March 19, but he admitted on the stand that he had not told them the truth.

Christine Garza testified that she had known appellant for four (4) years and lived with him until December, 1981. Their relationship ended and Ms. Garza was dating Abel Zapata (the deceased) at the time of the shooting. Appellant was aware of Ms. Garza's relationship with the deceased, and on March 12, 1982, appellant told Ms. Garza that he "would get" Abel Zapata. Zapata habitually carried a .25 caliber gun and told Ms. Garza he was going to kill appellant. The deceased used controlled substances habitually and had tattoos all over his body.

Dr. Vincent DiMaio (Bexar County Chief Medical Examiner) testified that Abel Zapata died as a result of gunshot wounds— one in the midline of the forehead, and one midway between the right knee and hip. The forehead wound could have been made by either a .25 caliber (the type owned by deceased) or a .32 caliber pistol, the knee-hip wound by a shotgun.

A blood sample of Zapata showed alcohol at a level of .18 grade. Nine (9) packets of LSD were found in the deceased's left front pocket. Dr. DiMaio testified that it is not possible to analyze LSD in blood; it would have been impossible to detect a level of LSD in the deceased's system. Also he testified that LSD could make a person aggressive.

Officer Richard Gonzalez testified that he arrived at the scene of the homicide on March 20, 1982 after Officer Holsen, and was told that a loaded .25 caliber automatic was found. Officer Holsen picked up the weapon in order to control the crowd, and placed it in his belt.

Officer Abel Juarez aided in the investigation of the death of Abel Zapata, and testified that he was unaware of any eye witnesses to the homicide. Officer Juarez further testified that a fully loaded .25 caliber pistol was recovered at the scene when Mr. Zapata was shot. The gun was not fingerprinted (after being handled by several people). Finally, Robert Cavazos testified that he was with the deceased on the evening of March 20, 1982, and that the deceased had approximately 5 to 10 drinks at "Dr. Feelgood's." Mr. Cavazos further testified that the deceased was having an argument with a person who may have been his girlfriend. The deceased was also involved in a physical argument with someone not the appellant, lasting for approximately 1 to 5 minutes, with approximately 20 people observing. Mr. Cavazos pulled the deceased away from the altercation when he began trying to fight. The deceased was determined to go back to the argument, and left Mr. Cavazos. Mr. Cavazos further testified that he heard a volley of shots, but did not see the deceased get shot. Mr. Cavazos witnessed the deceased lying on his back with his arms spread.

■ Appellant's first two grounds of error amount to an assertion that the jury had insufficient evidence upon which to find him guilty, particularly insofar as identifying appellant as the one who perpetrated the offense.

Testimony shows the deceased died from a shotgun blast and a pistol wound. Mr. Cavazos heard the shots and saw him fall. Appellant was identified by Mr. Cavazos as the man running from the scene with a shotgun in his hand. Appellant had made threats that he was going to "get" the deceased. These circumstances, plus the other evidence outlined above, are sufficient to support the jury's verdict. We overrule grounds of error one and two.

■ Likewise, we overrule ground of error five asserting error for the trial court's not submitting a charge on circumstantial evidence. *Hankins v. State,* 646 S.W.2d 191 (Tex.Crim.App.1981).

■ Ground of error three urges that the trial court reversibly erred in excluding evidence that the deceased had a reputation for being a dangerous and violent person. Certainly there was plenty of evidence admitted to show him to have been a violent person as per the foregoing account of his threats (uncommunicated to appellant insofar as the record shows) "to get" and "to kill" appellant. He was shown to have been aggressive towards some unknown person on his fatal night, but no testimony that it was appellant.

TEX.PENAL CODE ANN. sec. 19.06 (Vernon 1974), provides:

In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

No testimony that appellant knew of deceased's acts of violence or violent record was reflected in the record or bill of exceptions. *Beecham v. State,* 580 S.W.2d 588 (Tex.Cr.App.1979); *Medina v. State,* 639 S.W.2d 947 (Tex.Cr.App.1982). Ground of error three is overruled.

■ By ground of error four, appellant asserts that the trial court erred in its charge on law of parties in that the identity of the other actor was not specified (whom appellant allegedly aided, solicited, directed or encouraged). Appellant's brief is conclusory and cites no authority. State's brief reciting this shortcoming does cite two cases purporting to hold that, in this point, appellant has reflected nothing for us to review. *Evans v. State,* 614 S.W.2d 414 (Tex.Cr.App.1980), does not touch the subject: top, side or bottom. *Hawkins v. State,* 612 S.W.2d 720 [613 S.W.2d 720] (Tex.Cr.App.1981), is a ghost, at least it is nowhere listed in volume 612 of the Southwestern Reporter nor at page 720 thereof, but only in the brief of the State. However, we hold ground of error four to be conclusive with no authorities cited and only a sparse statement on the ground and we overrule it.

■ In ground of error six, appellant asserts that the trial court erred in refusing to submit appellant's requested charge on self-defense. "While not admitting that he shot the deceased, appellant alternatively raised the issue of self-defense." In other words, appellant is saying: "I am not saying I shot him but, if it is shown that I did, then I shot him in self-defense." Appellant's theory of self-defense rests upon the evidence of an unfired .25 caliber pistol having been found at the scene; plus testimony that deceased habitually carried a .25 caliber pistol; plus deceased's chronic drug habit and his possession of LSD on the night in question.

There is no doubt that an accused is entitled to a charge on self-defense if the issue is raised by the evidence. *Semaire v. State,* 612 S.W.2d 528 (Tex.Cr.App.1980).

"Raised by the evidence" is the key phrase on this question. We hold that: the testimony of deceased's habit of carrying a .25 caliber pistol, plus evidence of an unfired .25 caliber pistol found at the scene, plus the evidence of drug use by deceased, do not here raise the issue of self-defense. There was not testimony to raise the issue. No one testified that on the fatal night there was a weapon in deceased's possession; there were threats by deceased communicated to appellant; or there was any injury to appellant by deceased. Ground of error six is overruled.

■ Appellant asserts error in ground of error seven in the trial court's not dismissing the case where "evidence showed that material evidence was willfully and intentionally concealed by a police officer, thus prejudicing appellant's ability to present the defense of self-defense."

Appellant's thesis is that deceased's fingerprints *may* have been on the pistol found on the ground by the officer on the scene; that if such pistol had been properly processed and checked for such prints they *might* have been found.

The State asserts "at best, the evidence was that a weapon was discovered in the vicinity of the shooting *after* a large crowd of individuals had arrived at the scene." Also, it might be noted that exigency forced the officer who picked up the gun to do so with haste in the face of an excitable multitude of customers of Dr. Feelgood.

We are concerned here, not with the withholding of the pistol, but with the possible expunging of a supposed fingerprint which *might have been* on a pistol. This possibility is not the same as material evidence. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). We overrule ground of error seven.

We affirm.