Herman BROUSSARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–90–00171–CR.

Court of Appeals of Texas,
Dallas.

April 11, 1991.
Rehearing Denied May 20, 1991.

Richard Harrison, Kerry P. FitzGerald, Dallas, for appellant.

Carolyn Fitz–Gerald Levin, Dallas, for appellee.

Before WHITHAM, KINKEADE and WHITTINGTON, JJ.

## OPINION

WHITTINGTON, Justice.

Herman Broussard appeals his jury conviction for the offense of voluntary manslaughter, for which the jury sentenced him to eleven years' imprisonment. In three points of error, Broussard complains of the trial court's refusal to include in the jury charge an instruction on the law of self-defense and the trial court's submission of the standard statutory parole instruction under article 37.07 of the Texas Code of Criminal Procedure. Finding no error, we affirm the judgment of the trial court.

## FACTUAL BACKGROUND

Herman Broussard, a married man, was having an extramarital affair with Billie Jean Woodrow. Woodrow was a business associate of Orlando Malcolm, the decedent. Broussard suspected that Woodrow and Malcolm were romantically involved. Early on Saturday morning December 31, 1988, Woodrow and Broussard drove to Malcolm's residence. Woodrow, Broussard and Malcolm went out into the front yard to talk. Shortly thereafter, Broussard, after chasing Malcolm around the yard and street, shot and killed him.

## POINTS OF ERROR

■ We first address Broussard's third point of error, by which he asserts that the trial court committed fundamental error in submitting to the jury the standard parole instruction under article 37.07 of the Texas Code of Criminal Procedure. See TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4 (Vernon Supp.1991). At the trial, the *State* objected to the submission of the parole instruction while counsel for the *defense* responded by saying that he had no objection to the parole instruction in the charge.

On appeal, Broussard argues that the instruction violated his right to due process of law guaranteed by the Fifth Amendment, made applicable to the states through the Fourteenth Amendment to the United States Constitution, and violated his rights to due course of law guaranteed by article I, sections thirteen and nineteen of the Texas Constitution. See U.S. CONST. amends. V, XIV; TEX. CONST. art. I, §§ 13, 19; *Rose v. State,* 752 S.W.2d 529, 535, 537 (Tex.Crim.App.1987). He argues further that the reviewing court is required to apply a rule 81(b)(2) harm analysis. See TEX. R.APP.P. 81(b)(2). In order to sustain the conviction, he claims, this Court must be able to say beyond a reasonable doubt that the error made no contribution to the verdict. See *Arnold v. State,* 786 S.W.2d 295, 313 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 111 S.Ct. 110, 112 L.Ed.2d 80 (1990).

We agree that is what the Court of Criminal Appeals went to great length to explain in *Arnold.* We conclude however, that *Rose* and *Arnold* are not dispositive of our case. In *Rose,* the Court of Criminal Appeals found article 37.07 to be constitutionally defective. *Rose,* 752 S.W.2d at 535, 537. As a direct result of *Rose* and its progeny, on November 7, 1989, the Texas Constitution, article IV, section 11(a) was amended to read as follows:

§ 11. Board of Pardons and Paroles; parole laws; reprieves, commutations and pardons; remission of fines and forfeitures

Sec. 11. (a) The Legislature shall by law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its actions. The Legislature shall have authority to enact parole laws *and laws that require or permit courts to inform juries about the effect of good conduct time and eligibility for parole or mandatory supervision on the period of incarceration served by a defendant convicted of a criminal offense.*

TEX. CONST. art. IV, § 11(a) (emphasis added). As a result, the legislature now has authority to enact laws permitting courts to inform juries of the parole law. The legislature has done so in article 37.07, section four of the Code of Criminal Procedure. See TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4 (Vernon Supp.1991). It also provided that section four of article 37.07 would take effect on the date the amendment to section 11 of the Texas Constitu-

tion takes effect. Act of May 17, 1989, 71st Leg., R.S., ch. 103, § 2, 1989 Tex.Gen. Laws 442, 443. That amendment was approved by the voters on November 7, 1989. Section four of article 37.07 became effective on that date. Broussard's trial began on January 16, 1990 and his judgment of conviction was entered on January 23, 1990, more than two months after the constitutional amendment and the reenactment of section four of article 37.07 became effective. The trial court was specifically authorized to include instructions on good conduct time and parole and did not err in doing so.[1] We overrule Broussard's third point of error.

In his first and second points of error, Broussard claims the trial court erred in refusing to submit a jury instruction on the law of self-defense, including an instruction on the right of self-defense from apparent danger. Broussard contends the issue of self-defense was raised by the evidence and thus the instruction should have been given. We disagree. Sections 9.31 and 9.32 of the Texas Penal Code set out the elements of self-defense and when deadly force may be used in self-defense. They state in pertinent part:

§ 9.31.  Self–Defense

(a) Except as provided in Subsection (b) of this section, a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

(b) The use of force against another is not justified:

\* \* \* \* \* \*

(4) if the actor provoked the other's use or attempted use of unlawful force, unless:

(A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

(B) the other nevertheless continues or attempts to use unlawful force against the actor.

\* \* \* \* \* \*

(d) The use of deadly force is not justified under this subchapter except as provided in Sections 9.32, 9.33, and 9.34 of this code.

§ 9.32.  Deadly Force in Defense of Person

A person is justified in using deadly force against another:

(1) if he would be justified in using force against the other under Section 9.31 of this code;

(2) if a reasonable person in the actor's situation would not have retreated;  and

(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to protect himself against the other's use or attempted use of unlawful deadly force.

TEX.PENAL CODE ANN. §§ 9.31, 9.32 (Vernon 1974 and Vernon Supp.1991).

It is true that if the evidence raises the issue of self-defense, the accused is entitled to a jury instruction on this issue. *Semaire v. State,* 612 S.W.2d 528, 530 (Tex.Crim.App.1980). The defendant's testimony alone may be sufficient to raise a defensive theory requiring the instruction. *Warren v. State,* 565 S.W.2d 931, 934 (Tex. Crim.App.1978). The issue before the reviewing court is not the truth of the defendant's testimony, rather it is whether, if the testimony is believed, a case of self-defense has been made. *Dyson v. State,* 672 S.W.2d 460, 463 (Tex.Crim.App.1984). If such testimony, viewed in a favorable light, does *not* establish a case of self-defense, an instruction is not required. *Id.*

We now review the record to determine if there is evidence to satisfy all the requisites of sections 9.31 and 9.32. There must be some evidence to show that Brous-

1. We note the trial court charged the jury using the language in section 4(a) of article 37.07. That language is not appropriate. As the jury convicted Broussard of voluntary manslaughter, a second degree felony, section 4(c) of article 37.07 provides the applicable language. This, however, has no bearing on the appeal before us.

sard reasonably believed that use of deadly force was immediately necessary to protect himself against Orlando Malcolm's use or attempted use of unlawful force. That Broussard was not in fact attacked by Malcolm is immaterial. An individual has a right to defend from apparent danger to the same extent as he would had the danger been real; provided he acted upon a reasonable apprehension of danger as it appeared to him at the time. *Dyson*, 672 S.W.2d at 463.

The record reveals that Mrs. Malcolm's brown Pontiac was parked on the street in front of the Malcolm residence. Orlando Malcolm's Cadillac was parked in the driveway to the side street at the back of the house. Broussard testified that he knew Malcolm drove a Cadillac. Broussard parked his vehicle behind Mrs. Malcolm's Pontiac in front of the house. The trial evidence discloses that three witnesses testified that all of Malcolm's dodging, ducking, running around and hiding under was in relation to his wife's car. They testified that Malcolm was attempting to get away from Broussard. Malcolm's daughter stated that Broussard was chasing her father. Broussard and two witnesses each stated that they saw no weapon in Malcolm's possession that morning.

Broussard testified that Woodrow admitted to having had an affair with Malcolm and that Malcolm continued to call her on the telephone. Broussard saw this as harassment. Broussard chose to stop at Malcolm's house that morning and "get this straight." He admitted that he initially confronted Malcolm. Once in the front yard, according to Broussard, Malcolm "went in his pocket," said, "God damn, we'll get it straight once and for all," and "went to his car." However, as Broussard continued his narration, it was clear that he was referring to Mrs. Malcolm's brown Pontiac which was parked in front of the house and which he had parked behind. Broussard stated that he had heard that Malcolm "totes a pistol" in his car and seeing Malcolm move toward the car parked in the street in front of his house, Broussard "got terrified," went to his car and got his own gun and began shooting at Malcolm, who tried to flee. Broussard stated that as they ran around the car parked in the street, Malcolm attempted to get into it two or three times. During this chase Broussard shot at Malcolm over, around and under the car. He stated that he did not mean to kill Malcolm but was just terrified. He also stated that he felt he did not have time to safely drive away, that Malcolm would have gotten his gun and shot him before he could do so. Broussard admitted that he started shooting before Malcolm could get in the car in front and that Malcolm was never able to get into the car. Broussard should reasonably have known that if Malcolm were going for a gun he kept in *his* car, he would have run to the back of the house to his Cadillac, and not to his wife's Pontiac in the street in front. The testimony of the eyewitnesses that Malcolm was trying to get away from Broussard and hide was clear and unequivocal.

Broussard's testimony is the only evidence that arguably raises the issue of self-defense. If Broussard's version is accepted as true, we nonetheless find that such evidence fails to raise the issue of self-defense. To determine if the elements of sections 9.31 and 9.32 have been raised, we look to the surrounding circumstances. *Ogas v. State*, 655 S.W.2d 322, 324–25 (Tex. App.—Amarillo 1983, no pet.). We hold that as a matter of law there is no evidence that Broussard had a reasonable belief that the use of deadly force against Malcolm was immediately necessary to avoid imminent bodily injury or death. All elements not being raised, no charge was required. *See Dyson*, 672 S.W.2d at 463; *Mathews v. State*, 725 S.W.2d 491, 493–94 (Tex.App.—Corpus Christi 1987), *rev'd on other grounds*, 761 S.W.2d 11 (Tex.Crim.App. 1988); *Murphy v. State*, 700 S.W.2d 747, 751 (Tex.App.—Dallas 1985), *aff'd*, 777 S.W.2d 44 (Tex.Crim.App.1989) (on reh'g). The fact that Broussard testified that he was terrified is not dispositive. The evidence showed no grounds for such a fear. Broussard merely speculated on Malcolm's intentions. *See Werner v. State*, 711 S.W.2d 639, 644 (Tex.Crim.App.1986); *War-*

*ren v. State,* 764 S.W.2d 906, 909 (Tex. Crim.App.—Corpus Christi 1989, pet. ref'd); *Dyson,* 672 S.W.2d at 462–63. Neither is the fact that Broussard heard Malcolm carried a gun. *See Rios v. State,* 661 S.W.2d 775, 778 (Tex.App.—Fort Worth 1983, pet. ref'd, untimely filed). There is simply nothing in the record to indicate Malcolm used or attempted to use deadly force. Thus, no evidence shows a justification for the use of deadly force under section 9.32. *See Warren v. State,* 764 S.W.2d at 909; *Ogas,* 655 S.W.2d at 324; *Bray v. State,* 634 S.W.2d 370, 372 (Tex.App.—Dallas 1982, no pet.). Further, there is nothing in the evidence to show that a reasonable person in Broussard's circumstances would not have retreated. *See Werner,* 711 S.W.2d at 645; *Mathews,* 725 S.W.2d at 494. We hold that the issue of self-defense was not raised, as all elements of sections 9.31 and 9.32 were not met. Broussard was not entitled to an instruction on the issue. Apparent danger is a facet of self-defense. *Brooks v. State,* 548 S.W.2d 680, 684 (Tex.Crim.App.1977). Since Broussard was not entitled to an instruction on self-defense, he also was not entitled to have this specific type submitted. *Warren,* 764 S.W.2d at 909. We overrule points of error one and two.

We affirm the judgment of the trial court.

WHITHAM, Justice, concurring.

I concur in the result. I do so because counsel for the defense advised the trial court that he had no objection to the parole instruction in the charge. Contrary to the majority's opinion, I am not persuaded that the 1989 amendment to Article IV, Section 11(a) of the Constitution of the State of Texas solves the various constitutional issues arising under the federal and state constitutions raised by article 37.07 of the Texas Code of Criminal Procedure as amended. *See Rose v. State,* 724 S.W.2d 832, 845–46 (Tex.App.—Dallas 1986) (Whitham, J., dissenting), *aff'd,* 752 S.W.2d 529 (Tex.Crim.App.1987). I reserve the right to address further constitutional challenges to article 37.07 should they be raised by proper point of error and briefing of argument in another appeal.