

# NUMBER 13-09-00116-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CHARLES WAYNE WARDEN,                                    Appellant,

v.

THE STATE OF TEXAS,                                           Appellee.

## On appeal from the 138th District Court of Cameron County, Texas.

# MEMORANDUM OPINION

## Before Justices Rodriguez, Benavides, and Vela
## Memorandum Opinion by Justice Rodriguez

A jury found appellant Charles Wayne Warden guilty of the murder of Juan Jose

Bennett (Counts I and II) and the aggravated assault of Christopher Gutierrez (Count IV).[1]

---

[1]In addition, the jury found appellant guilty of the attempted murder (Count III) of Gutierrez who is also identified in the record as Christopher Gutierrez Garcia. However, the State elected to abandon this count at the punishment phase of the trial.

*See* TEX. PENAL CODE ANN. §§ 19.02(b)(1)-(2) (Vernon 2003), 22.02(a)(2) (Vernon Supp. 2009).  By three issues which we renumber as two, appellant contends that the trial court erred in refusing jury charge instructions on (1) self-defense and (2) the lesser included offense of deadly conduct.[2]  We affirm.

## I. BACKGROUND[3]

At approximately 2:30 a.m. on October 14, 2007, appellant shot Gutierrez and Bennett with a .22 caliber rifle in the parking lot of a nightclub on South Padre Island. Gutierrez survived after being shot three times.  Bennett died from a gunshot wound to the chest.  Following a trial on the merits, the jury found appellant guilty of the murder of Bennett and the aggravated assault of Gutierrez.[4]  The jury assessed punishment at sixty-five years' and fifteen years' imprisonment in the Texas Department of Criminal Justice for the respective offenses, with the sentences to run concurrently.  The trial court denied appellant's motion for new trial.  This appeal followed.

## II. DISCUSSION

### A. Self-Defense Instruction

By his first issue, appellant contends that the trial court erred in failing to give a defensive instruction on self-defense.  He asserts that the evidence at trial supported his requested instruction and that the trial court's refusal to submit this defensive charge was

---

[2]The charge included a defensive instruction on insanity; however, appellant brings no issue regarding his theory of insanity and acknowledges that "this theory is largely irrelevant for purposes of this appeal."

[3]Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.  *See* TEX. R. APP. P. 47.4.

[4]The jury also returned a deadly weapon finding.

2

harmful error because, if the jury had been given the opportunity to consider and apply self-defense, he could have been acquitted of murder and aggravated assault.

## 1. Applicable Law and Standard of Review

A defensive issue "is not submitted to the jury unless evidence is admitted supporting the defense." *Id*. § 2.03(c) (Vernon 2003).

> Under § 2.03(c), a defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true. In determining whether a defense is thus supported, a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven. If a defense is supported by the evidence, then the defendant is entitled to an instruction on that defense, even if the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible. But the evidence must be such that it will support a rational jury finding as to each element of the defense.
>
> The requirement that the evidence must rationally support a jury finding before a defensive instruction is required serves to preserve the integrity of the jury as the factfinder by ensuring that it is instructed as to a defense only when, given the evidence, that defense is a rational alternative to the defendant's criminal liability. If a jury were instructed as to a defense even though the evidence did not rationally support it, then the instruction would constitute an invitation to the jury to return a verdict based on speculation.

*Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007). Therefore, to be entitled to the requested instruction under the circumstances here, appellant had to show some evidence, from any source, on each element of self-defense. *See id*.

The use of force against another for self-defense is justified "when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a) (Vernon Supp. 2009) (defining self-defense). "Reasonable belief" is defined as

3

belief that would be held by an ordinary and prudent man in the same circumstances as the actor. *Id*. § 1.07(a)(42) (Vernon Supp. 2009).

The use of deadly force requires a showing that (1) the person would be justified in using force against another under section 9.31 and (2) the use of deadly force is immediately necessary "to protect the actor against the other's use or attempted use of unlawful deadly force." *Id*. § 9.32(a)(1), (2)(A) (Vernon Supp. 2009) (providing for deadly force in defense of a person). "Deadly force" is defined as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id*. § 9.01(3) (Vernon Supp. 2009).

We review the evidence in the light most favorable to the defendant to determine whether it is sufficient to raise the issue of self-defense. *See Shaw*, 243 S.W.3d at 658; *Ex parte Nailor*, 149 S.W.3d 125, 132 (Tex. Crim. App. 2004) (citing *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001)); *Preston v. State*, 756 S.W.2d 22, 24 (Tex. App.–Houston [14th Dist.] 1988, pet. ref'd). "Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law." *Shaw*, 243 S.W.3d at 658.

## 2. Relevant Facts

According to his statement, appellant thought Gutierrez had stolen items from his truck and followed him to the club parking lot. After getting out of their vehicles, appellant began chasing Gutierrez on foot. Gutierrez talked with a group of people. When they began yelling at appellant, he went to his truck and got his loaded, semi-automatic rifle. Appellant "fired a shot into the air to try and get police there." According to appellant, the

4

group of people came toward him, taunting him, and he fired another round into the air. Appellant's statement continues as follows:

> As they were coming closer one guy in particular [Bennett] was walking me down. I was backing up[,] and he kept coming[,] and I kept backing up. I kept telling the guy that I would shoot him as I was still walking backwards. . . . The guy kept trying to get closer to me. I had the rifle in front of me holding it with both my hands with the barrel pointing up by the left side of my face. The guy was walking me down[,] and I felt that he was going to try and take the rifle away. I told the guy that I would shoot[,] and he kept coming. I lower[ed] the barrel of the rifle and pointed it toward him point blank. I was still walking back. I opened up on him. I pulled the trigger on the rifle. I closed my eyes and just started shooting. I went bam bam bam. . . . I felt that I did not have a choice [but] to shoot this guy. I told him several times that I would shoot him if he kept coming toward[ me]. I could have handled this [if] I would not have been so pi**ed off[,] and the guy is dead[,] and it should not have come down to that. This had absolutely nothing to do with him[.] I do not even know him. I know he knew that I had a gun in my hand. . . .

Gutierrez, one of the victims, testified that he left the club around 2:00 a.m., only to be called back a short time later to pick up a friend. Gutierrez explained that a red pickup truck followed him as he returned to the club. When they reached the club's parking lot, the driver of the truck, later identified as appellant, got out of his vehicle and approached Gutierrez. Appellant spoke to Gutierrez in English. Gutierrez, who speaks only Spanish, did not understand him. Gutierrez explained that as he knelt down to get his cell phone from his vehicle, appellant "crushed [him] with the . . . car door." Gutierrez ran and tried to hide among the cars in the parking lot. When he saw appellant get a .22 caliber rifle from his truck, Gutierrez, who had no weapon, ran to the other side of the street. Gutierrez testified that he heard four gunshots and was shot three times, once in the back, a second time in the elbow, and a third time. Gutierrez stated he knew nothing about appellant

5

shooting anyone else and did not remember anything about a bat. At trial, Gutierrez identified appellant as the person who shot him.

Miguel Gonzalez, the former owner/manager of the club, was tending bar that evening. Gonzalez explained that he saw appellant chasing Gutierrez and tried to intervene. Gonzalez told appellant to "just calm down. Everything is okay." When appellant got a rifle out of his truck, Gonzalez ran inside the club. He heard shots but did not see appellant shooting the rifle. Gonzalez identified appellant as the man he saw get a gun from the bed of a truck. Gonzalez further agreed, on cross-examination, that he saw appellant take the gun out of the truck, put it back, and take it out again. When asked if Gutierrez "had anything in his hands like a weapon, a bat, a gun, a knife," Gonzalez answered, "No, he didn't have anything." Gonzalez also testified that he did not see anyone threaten appellant and never saw a baseball bat. After the police arrived, Gonzalez saw a patron throw a chair from the patio toward appellant who was in the front parking lot. Finally, Gonzalez testified that he saw two red spots, like blood, on appellant's chest.[5] Although Gonzalez told the police that appellant hit himself, at trial Gonzalez stated that he did not know if "somebody else did it or [if appellant] hit himself."

Defense witness Gerardo Trevino, who arrived at the club around 1:00 a.m. on the morning in question, heard shots but did not see the shooting. Trevino testified that he saw "four guys" with a bat, walking toward appellant. They looked scared, and when appellant took the gun out of his truck and pointed it at the people, "[t]hey started running." He, too, affirmed that Gutierrez had no weapon; "[h]e was afraid."

---

[5]Appellant was not wearing a shirt when the shootings occurred.

6

Servando Sanchez's testimony revealed that he spent time with Bennett at the club earlier in the evening. He agreed that Bennett was intoxicated but that he was able to walk around and make decisions and was not "falling around [drunk]."[6] Sanchez testified that he was in the club when a friend told him that "some guy had gotten shot outside." Sanchez went outside and saw one person laying between the motorcycles. He also saw Bennett walking in the parking lot toward the red pickup truck. Sanchez testified that he hopped over the railing and asked Bennett, "[W]hat's going on?", and Bennett said that appellant was trying to leave and "he just shot these other people. You know, he can't just leave like that." Sanchez also explained that Bennett was "exchanging words" with appellant, telling him, "I saw what you did. You know, you can't just leave like that, you can't get away with that."

According to Sanchez, Bennett walked up to appellant who was in his truck with the door open. Appellant then went to the bed of his truck, pulled out a rifle, walked up to Bennett, fired off one warning shot in the air, and then "shot [Bennett] point blank in the chest." Sanchez testified that Bennett had no weapon in his hand and did not threaten appellant. Sanchez explained that at the time of the shooting, only two people were approaching appellant, not in an aggressive manner but rather "just walking." Sanchez did not see anybody with a baseball bat. He noticed "red marks" on appellant's side and shoulder that "looked like blood." Sanchez stated that he also saw a chair in the parking lot—a chair that had been thrown by someone—but he did not know whether it was thrown before or after Bennett was shot.

---

[6]Norma Jean Farley, M.D., chief forensic pathologist for Cameron and Hidalgo Counties, performed the autopsy on Bennett. She agreed that some people can become mean and aggressive when they "get drunk." Dr. Farley also testified, however, that she could not tell how Bennett would have been acting.

Edna Lou Stambough, a bartender at the club when the incident occurred, explained that she saw Bennett go to appellant and ask him, "What are you going to do[,] shoot me, is that what you're going to do?" In response, appellant "just picked up the gun slowly and just shot him." Although Stambough testified that someone screamed that Bennett had been shot and "threw a chair then jumped over the banister at the front patio," she later explained that she was not sure if the chair was thrown before or after Bennet was shot. Stambough also testified that she did not see a baseball bat that night.

Jaime Rodriguez, a detective with the criminal investigation division of the South Padre Island Police Department, was the first responding officer. He identified the weapon recovered from the parking lot as a .22 caliber long rifle Ruger, semiautomatic weapon; a weapon capable of causing the death of an individual and which he considered a "deadly weapon." In addition, according to Detective Rodriguez, an aluminum bat was recovered from the rear parking lot of the club, and he saw redness, not bloody wounds, on appellant that evening.

Detective Rodriguez also identified the "dash cam video" taken from the police car of another officer who responded to the call. The jury viewed the video that showed appellant, Bennett, and one other person in the front parking lot outside the club's patio area.[7] Appellant was holding a rifle. The video captured verbal exchanges and shoving.[8] Appellant was moving backward and Bennett was walking toward him when appellant fired

---

[7]Based on our review of the record, Servando Sanchez was the other person shown in the video with Bennett.

[8]Detective Rodriguez testified that he did not see Bennet beating or shoving appellant. He did agree, however, that during the course of his investigation he learned that another officer reported that he saw Bennett shoving appellant in the parking lot before Bennett was shot.

his rifle, hitting Bennett in the chest. The video also recorded a chair being thrown from the patio either immediately before, during, or immediately after the shot was fired.

### 3. Analysis

Reviewing the evidence in the light most favorable to appellant to determine whether the evidence is sufficient to raise the issue of self-defense, *see id.*, we first note that appellant is not entitled to use deadly force based on verbal provocation alone. *See* TEX. PENAL CODE ANN. § 9.31(b)(1) (Vernon Supp. 2009); *Hamel v. State*, 916 S.W.2d 491, 494 (Tex. Crim. App. 1996). Bennett's comments to appellant in the parking lot could be viewed as an expression of his desire to keep appellant from leaving. However, we cannot conclude that Bennett's words alone justified appellant's actions. *See* TEX. PENAL CODE ANN. § 9.31(b)(1); *Hamel*, 916 S.W.2d at 494; *Lane v. State*, 957 S.W.2d 584, 586 (Tex. App.–Dallas 1997, pet. ref'd). Also, pushing or shoving does not normally constitute deadly force, and based on our review of the evidence, we cannot conclude that Bennett's act of pushing is evidence that he used or attempted to use deadly force so as to justify appellant's deadly response. *See* TEX. PENAL CODE ANN. § 9.32(a). And, while use of a baseball bat may, in some circumstances, constitute the use of deadly force, here there is no evidence that anyone, including Bennett, used or attempted to use a baseball bat in a way that could be the basis for a reasonable belief by appellant that his use of deadly force was immediately necessary. *See Holmes v. State*, 830 S.W.2d 263, 265 (Tex. App.–Texarkana 1992, no pet.) (finding that appellant's use of a baseball bat to hit someone in the head was a use of deadly force) (citing *Hayes v. State*, 728 S.W.2d 804, 808 (Tex. Crim. App. 1987) (op. on reh'g) (holding that a coke bottle can be a deadly weapon if used as a club)). There was also evidence of blood on appellant's upper body

9

and of a chair being thrown at or toward appellant when Bennett was shot. However, this evidence, without more, would not support a rational jury finding that appellant's use of deadly force was immediately necessary to protect him against Bennett's use or attempted use of unlawful deadly force. See TEX. PENAL CODE ANN. § 9.32(a)(1).

From appellant's point of view, the evidence does show that appellant was afraid Bennett would take his gun away. See Reed v. State, 703 S.W.2d 380, 384 (Tex. Crim. App. 1985) (per curiam) ("The statute necessarily contemplates that the force used by a defendant must be reasonable as contemplated from the defendant's point of view.") (citing Dyson v. State, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984) (en banc) ("A person has a right to defend from apparent danger to the same extent as he would had the danger been real; provided he acted upon reasonable apprehension of danger as it appeared to him at the time.")). In his statement, appellant said, "The guy [Bennett] was walking me down and I felt that he was going to try and take the rifle away." The existence of fear of imminent bodily harm or death sufficient to warrant a self-defense instruction, however, cannot be based upon mere speculation regarding the intentions of the deceased, absent any other evidence showing grounds for that fear. See Broussard v. State, 809 S.W.2d 556, 559 (Tex. App.–Dallas 1991, pet. ref'd). The fact that appellant, through his statement, testified that Bennett "was going to try and take the rifle away," is not dispositive.

Appellant merely speculated on Bennett's intention to take his gun away, and there is no other evidence in this case showing grounds for fear of imminent bodily harm or death that would warrant a self-defense instruction. See id.; Smith v. State, 638 S.W.2d 208, 210 (Tex. App.–Fort Worth 1982, no pet.) (affirming the trial court's refusal to include a self-defense instruction because, although the victim struck the defendant in the same

10

encounter in which the shooting occurred and had threatened the defendant on previous occasions, use of "deadly force could not have reasonably been believed to be immediately necessary to protect [the defendant] against [the victim]"); *see also Hernandez v. State*, No. 04-05-00078-CR, 2006 Tex. App. LEXIS 1388, at **9-11 (Tex. App.–San Antonio Feb. 22, 2006, pet. ref'd) (mem. op., not designated for publication) (holding that a wife who had been beaten by her husband was not entitled to a defensive instruction upon shooting her husband because there was "no evidence showing the immediacy of any threat posed by the victim"). There is no evidence that appellant feared Bennett would shoot him after he took his gun. Bennett's words to appellant were that he had seen what appellant had done and that appellant could not leave or get away with it. Bennett never indicated that he intended to cause appellant death or serious bodily injury. After words were exchanged, Bennett shoved appellant and walked toward him, but Bennett was not carrying a weapon; he never showed appellant a weapon of any kind. And the four "guys" who approached appellant with a bat fled when appellant retrieved his gun. Finally, appellant did not know Bennett, and there is no evidence that appellant encountered Bennett during the course of events that led to the shooting. *Cf. Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (citing Tex. R. Evid. 404(b) ("Specific, violent acts of misconduct may be admitted to show the reasonableness of the defendant's fear of danger, or to show that the deceased was the first aggressor. But specific acts are admissible only to the extent that they are relevant for a purpose other than character conformity.").

Thus, reviewing this sufficiency question as a question of law and assuming without deciding that some evidence shows appellant was justified in using some force against

Bennett as described in section 9.31 of the penal code, we nonetheless conclude that the evidence is not sufficient to support a rational jury finding that appellant reasonably believed deadly force was immediately necessary to protect himself against Bennett's use or attempted use of deadly force—the second element that must be shown by the evidence in this case to support the requested self-defense instruction. *See* TEX. PENAL CODE ANN. § 9.32(a)(1), (2)(A); *Shaw*, 243 S.W.3d at 658; *see also* TEX. PENAL CODE ANN § 9.31. If the jury had been given a self-defense instruction as to the murder counts, the instruction would have constituted an invitation to the jury to return a verdict based on speculation. *See Shaw*, 243 S.W.3d at 658*.*

Furthermore, viewing that evidence in the light most favorable to appellant, we conclude that the evidence does not support a rational jury finding that appellant reasonably believed, as would an ordinary and prudent man in his circumstances, that the force he used against Gutierrez was immediately necessary to protect himself against Gutierrez's use or attempted use of unlawful force. *See* TEX. PENAL CODE ANN. § 9.31; *see also id*. § 1.07(a)(42). Appellant was chasing Gutierrez in the parking lot of the club because he thought Gutierrez had stolen items from his truck. Four people approached appellant. They looked scared. One person was holding a bat. However, when appellant pointed a gun at the group of people, they fled. Gutierrez had no weapon. He appeared afraid. Gutierrez was running away and trying to hide from appellant. In fact, the evidence shows that when Gutierrez saw appellant with a gun, he ran to the other side of the street, apparently in an attempt to get further away. Thus, as to appellant's actions toward Gutierrez, we conclude that the first element of self-defense by deadly force was not

12

satisfied, and we need not reach the second element. *See* TEX. PENAL CODE ANN. § 9.32(a)(1).

Based on the above, we conclude that the trial court did not err in refusing a self-defense instruction in this case.[9] Given the evidence, we cannot conclude that self-defense was a rational alternative to appellant's criminal liability. *See Shaw*, 243 S.W.3d at 658. We overrule appellant's first issue.

## B. Lesser-Included-Offense Charge

By his second issue, appellant asserts that the trial court erred when it denied his requested jury charge on the lesser included offense of deadly conduct. *See id*. § 22.05 (Vernon 2003); TEX. CODE CRIM. PROC. ANN. art. 37.09(a) (Vernon 2006). Appellant contends that there is some evidence that he was guilty of the lesser included offense or that "[t]here is a multitude of conclusions that the jury could have reached depending on what portions of the evidence it accepted or rejected." We disagree.

## 1. Standard of Review

Our standard of review for a lesser-included-offense challenge has been clearly set out by the Texas Court of Criminal Appeals as follows:

> [W]e consider only the statutory elements of the greater offense, "as they were modified by the particular allegations in the indictment," in the first step of the lesser-included-offense analysis. We then compare those modified elements with the statutory elements of the alleged lesser offense. We then ask the question posed by Article 37.09(1) of the Texas Code of Criminal Procedure: whether the elements of the lesser offense are "'established by proof of the same or less than all the facts required to establish [] the

---

[9]Having concluded that the trial court did not err in denying appellant's requested self-defense instruction, we need not address his claim that the trial court's failure to submit this defensive charge was harmful error. *See* TEX. R. APP. P. 47.1; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (providing for proper harm analysis—some harm or egregious harm—depending upon whether error, if any, has been preserved).

commission of the offense charged'?" It is only if the answer to that question is in the affirmative that we then take the second step of the analysis, in which we examine the evidence produced at trial to determine whether it warrants giving the lesser-included-offense instruction to the jury.

*Evans v. State*, 299 S.W.3d 138, 141 (Tex. Crim. App. 2009) (quoting *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2008) (quoting TEX. CODE CRIM. PROC. art. 37.09(1))).

The first part of the test is a question of law that does not depend on the evidence presented at trial, and, in this case, would require us to ask whether, based on the statutory elements and the particular facts alleged in the indictment, deadly conduct is a proper lesser included offense of either murder or aggravated assault. *See Hall*, 225 S.W.3d at 526, 535-36. The second part of the test is a question of fact that depends on the evidence actually presented at trial and asks if there is some evidence in the record that would permit a jury to rationally find that if appellant is guilty at all, he is guilty only of deadly conduct. *Id*. at 536. In this step of the analysis, anything more than a scintilla of evidence may be sufficient to entitle a defendant to the lesser charge. *Id*.; *Schweinle v. State*, 915 S.W.2d 17, 18 (Tex. Crim. App. 1996) (en banc) (per curiam). Regardless of its strength or weakness, if any evidence raises the issue that the defendant was guilty only of the lesser included offense, then the charge must be given. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992) (en banc) (per curiam).

The evidence can indicate a defendant is guilty of only the lesser offense in one of two ways. *See id*. First, if the evidence either "affirmatively refutes or negates an element establishing the greater offense," the lesser included offense is raised. *Schweinle*, 915 S.W.2d at 19. Second, "a defendant may be shown guilty only of the lesser offense if the evidence presented is subject to two interpretations." *Saunders*, 840 S.W.2d at 392; *see*

14

*Ross v. State*, 861 S.W.2d 870, 875 (Tex. Crim. App. 1992) (en banc) ("Where the evidence given at trial is subject to two reasonable inferences, the jury should be instructed on both inferences."). If we find error in the charge submitted to the jury, we must still determine whether sufficient harm resulted from the error to require reversal. *See Ross*, 861 S.W.2d at 875; *see also Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995) (en banc); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1986) (op. on reh'g).

## 2. Murder

The indictment, in this case, charged appellant with the murder of Bennett by intentionally or knowingly causing his death with a firearm (Count I) and by committing an act clearly dangerous to human life with the intent to cause serious bodily injury and did cause Bennett's death by shooting him with a firearm (Count II). *See* Tex. Penal Code Ann. § 19.02(b)(1)-(2). A person commits the offense of deadly conduct if (a) he "recklessly engages in conduct that places another in imminent danger of serious bodily injury" or (b) if he "knowingly discharges a firearm at or in the direction of: (1) one or more individuals; or (2) a habitation, building or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." *Id*. § 22.05(a) & (b). An offense under sub-section (a) is a Class A misdemeanor and an offense under sub-section (b) is a third-degree felony. *Id*. § 22.05(e). Appellant does not specify whether his conduct satisfies sub-section (a) or sub-section (b). *See id*. § 22.05(a) & (b). Appellant does, however, refer to reckless conduct and to placing another in "imminent danger of serious bodily injury"; therefore, we will presume his argument pertains to sub-section (a). *See id*. § 22.05(a).

Misdemeanor deadly conduct differs from murder in its culpable mental state; it requires a reckless mental state, *see id.*, whereas murder requires knowledge or intent. *See id.* § 19.02(b)(1)-(2). Intent is a higher degree of culpability than recklessness. *Id.* § 6.02(d) (Vernon Supp. 2009). To prove murder as alleged in the indictment, the State was required to show that appellant intentionally or knowingly caused Bennett's death or committed a dangerous act with the intent to cause Bennett serious bodily injury and did cause his death, by shooting him with a firearm. *See id.* § 19.02(b)(1)-(2). To prove deadly conduct as argued by appellant, the State would have only been required to show that appellant recklessly engaged in conduct that placed Bennett in imminent danger of serious bodily injury. *See id.* § 22.05(a). Thus, to prove the greater offense of murder, the State was required to prove the elements of deadly conduct "plus something more." *See Guzman v. State*, 188 S.W.3d 185, 189 (Tex. Crim. App. 2006); *see also Haywood v. State*, 158 S.W.3d 476, 478-79 (Tex. Crim. App. 2005) ( "[W]e examine the elements of the offense claimed to be a lesser-included offense to see if the elements are functionally the same as or less than those required to prove the charged offense."); *Jacob v. State*, 892 S.W.2d 905, 908-09 (Tex. Crim. App. 1995) (en banc) (same). Because a comparison of the elements of the two offenses demonstrates that deadly conduct is a lesser included offense of murder as charged in this case, the first part of the test is met. *Cf. Guzman*, 188 S.W.3d at 189 (determining that deadly conduct is a lesser included offense of attempted murder); *Godsey v. State*, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986) (en banc) (finding that deadly conduct is a lesser included offense of attempted capital murder); *Flores v. State*, 245 S.W.3d 432, 440 (Tex. Crim. App. 2008) (concluding that deadly conduct is a lesser included offense of capital murder).

16

Having determined that deadly conduct is a lesser included offense of murder in this case, we turn to the second step of the inquiry: whether the evidence is such that a rational jury could find that if appellant is guilty, he is only guilty of deadly conduct. *See Hall*, 225 S.W.3d at 526, 536. Appellant appears to argue that the jury could have concluded that he negated the "intentional or knowing" element of murder. Appellant, however, points this Court to no evidence supporting his argument.

Appellant's own statement provided that appellant told Bennett he was going to shoot him. The fact that words were exchanged and pushing and shoving occurred before the shot was fired does not negate the greater offense in this case. And the fact that appellant fired a warning shot does not suggest that appellant, with his next shot, was recklessly engaging in conduct that placed Bennett in imminent danger of serious bodily injury. Furthermore, Stambough explained that when Bennet asked appellant, "What are you going to do[,] shoot me, is that what you're going to do?", appellant "just picked up the gun slowly and just shot him." Sanchez testified that appellant, who was in his truck with the door open, went to the bed of his truck and pulled out a rifle, walked up to Bennett, fired a warning shot, and then "shot him point blank in the chest." In fact, appellant, himself, stated,

> I told the guy that I would shoot and he kept coming. I lower[ed] the barrel of the rifle and pointed it toward him point blank. I was still walking back. I opened up on him. I pulled the trigger on the rifle. I closed my eyes and just started shooting. I went bam[,] bam[,] bam.

No evidence was introduced suggesting that the shot that killed Bennett was not a deliberate shot.

17

We cannot conclude that the evidence set out above would support the idea that appellant was guilty only of deadly conduct, as appellant argues. *Saunders*, 840 S.W.2d at 391. There was no evidence affirmatively refuting or negating an element of murder, and there was no evidence that was subject to two interpretations. *See Schweinle*, 915 S.W.2d at 19; *Saunders*, 840 S.W.2d at 392. We conclude, therefore, that the trial court did not err in refusing to submit an instruction on deadly conduct as a lesser included offense of murder.

### 3. Aggravated Assault

It is well settled that deadly conduct is also a lesser included offense of aggravated assault. *Guzman*, 188 S.W.3d at 190-92. We will, therefore, focus only on the evidentiary step of the lesser-included-offense analysis. *See Evans*, 299 S.W.3d at 141; *Hall*, 225 S.W.3d at 536.

In proving aggravated assault in this case, the evidence would have to show that appellant intentionally, knowingly, or recklessly shot Bennett with a firearm, that Bennett suffered serious bodily injury as a result, and that appellant used or exhibited a deadly weapon, a firearm, during the assault.[10] *See* TEX. PENAL CODE ANN. § 22.02 (defining aggravated assault); *see also id*. § 22.01(Vernon Supp. 2009) (defining simple assault). As set out above, misdemeanor deadly conduct is committed if the defendant "recklessly engages in conduct that places another in imminent danger of serious bodily injury."[11] *See*

---

[10]Appellant's argument appears to include the indicted offense of attempted murder (Count III). However, because the State abandoned that count at punishment, it is not before us in this appeal.

[11]Again, we note that appellant does not specify whether his conduct toward Gutierrez satisfies sub-section (a) or sub-section (b) of the deadly-conduct statute. *See* TEX. PENAL CODE ANN. § 22.05(a) & (b) (Vernon 2003). However, because appellant's argument is based on reckless conduct, we will presume that his argument, as to the aggravated assault charge, also pertains to sub-section (a). *See id*. § 22.05(a).

*id*. § 22.05(a)*.* Thus, both aggravated assault and deadly conduct could have the same culpable mental state—recklessness. *See Guzman*, 188 S.W.3d at 190-92. However, with deadly conduct, the evidence would have to show merely that appellant placed Bennett in imminent danger of serious bodily injury, regardless of whether he actually caused serious bodily injury or whether he caused any bodily injury at all. *See* TEX. PENAL CODE ANN. § 22.05(a). If "the defendant inflicts serious bodily injury, there can be no question that he has at least committed aggravated assault by recklessly inflicting serious bodily injury." *Guzman*, 188 S.W.3d at 197. "That being so, the evidence cannot support a rational inference that the defendant is guilty only of deadly conduct." *Id*.

At the charge conference, appellant requested that the jury charge include the offense of deadly conduct and argued the following:

> There was clearly evidence and I'm just talking specifically to Mr. Gutierrez and not Mr. Bennett in this situation, that my client fired warning shots in the air, that's an act clearly dangerous. Now there was no evidence whatsoever by the medical examiner or otherwise as to how Mr. Gutierrez was shot. Strange things have happened and juries can infer from the evidence anything they want, but evidence is clear that warning shots were fired and we don't know how he actually was shot. There was no medical evidence elicited from a medical examiner or anybody that those shots that were fired in the air that could have been reckless, could have shot—could have caused injury to Mr. Gutierrez so we feel that a charge on deadly conduct is warranted.

On appeal, appellant contends that "[c]ertainly there is some evidence that if appellant is guilty, he is guilty only of the deadly conduct which requires a showing that appellant recklessly placed [Gutierrez] in imminent danger of serious bodily injury."

Through his arguments, appellant concedes that his actions were reckless—that he had a reckless state of mind. Thus, the mental state required for aggravated assault is satisfied. Furthermore, the evidence shows that appellant's conduct resulted in serious

19

bodily injury to Gutierrez when he shot him with a firearm. These facts are not disputed on appeal. Therefore, the evidence established the offense of aggravated assault. It logically follows, then, that there is no evidence in the record that would permit a jury to rationally find that if appellant is guilty, he is guilty only of deadly conduct and not aggravated assault.[12] *See Hall*, 225 S.W.3d at 526, 536; *Guzman*, 188 S.W.3d at 190. There was no evidence affirmatively refuting or negating an element of aggravated assault, and there was no evidence that was subject to two interpretations. *See Schweinle*, 915 S.W.2d at 19; *Saunders*, 840 S.W.2d at 392. We, thus, conclude that the trial court did not err in refusing to submit an instruction on deadly conduct as a lesser included offense of aggravated assault in this case.

Accordingly, we overrule appellant's second issue.

### III. CONCLUSION

The judgment of the trial court is affirmed.

NELDA RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 16th
day of September, 2010.

---

[12]Having concluded that there was no error in the trial court's denial of appellant's requested lesser-included-offense charge issue, we need not address his claim that the trial court's denial was harmful. *See* TEX. R. APP. P. 47.1; *Almanza*, 686 S.W.2d at 171.

20