# NO. 12-08-00390-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *GILBERTO PEREZ, JR.,*<br>*APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Gilberto Perez, Jr. appeals his conviction for murder. He raises three issues on appeal. We affirm.

### BACKGROUND

On August 12, 2007, Wesley Tyrone Hawthorne, the victim, was at his sister's home attending a barbeque cookout. Several hours later, Hawthorne left the barbeque in his sister's Ford Mustang to take his friend Kelvin Lewis a plate of food. In the interim, Hawthorne received a call from Appellant, asking Hawthorne to pick him up so that they could visit and drink a bottle of Appellant's gin.[1] After Hawthorne picked up Appellant, the pair went to Lewis's home around midnight,[2] where they consumed the food and alcohol they had brought along with them. They left Lewis's home at around 1:30 to 2:00 a.m. in a good humor. Hawthorne telephoned his sister at 2:00 to 2:30 a.m. and told her that he was fine, was having a good time, and would call her when he returned home.

---

[1] Hawthorne and Appellant had been friends for approximately twelve years at the time of Hawthorne's death. Hawthorne was married to Appellant's cousin at one time, and they had two children. The couple ultimately divorced, but Appellant and Hawthorne remained close friends.

[2] Lewis was a friend of Hawthorne.

Appellant gave differing versions of what happened next. He recounted to police officers on the scene that while driving Appellant home, Hawthorne became angry, was "talking shit," and struck Appellant, requiring Appellant to react in self-defense. At trial, Appellant testified that he was asleep in the Mustang and awoke to Hawthorne repeatedly hitting him in the face with his elbow. He stated that at the time, he did not realize who was hitting him because he was "blacked out" and "halfway dazed." Appellant stated further that he initially thought both of them had been jumped by unknown third parties, but later recalled striking Hawthorne in an attempt to defend himself.

At the time of the fight, the Mustang was stopped in front of the home of Luis Perez, Appellant's uncle. After hitting Hawthorne, Appellant ran to Luis's home and knocked on the window, awakening him. Appellant and Luis moved the Mustang out of the road. When Appellant asked Luis to help him transport Hawthorne to the Mustang to "sleep it off," Luis replied that he would not. Luis then proceeded to call 911. In response, Appellant became angry and struck Luis. Luis and Appellant's brother Hector, who lived with Luis at the time, struggled to subdue Appellant until the police and paramedics arrived. Upon their arrival, the paramedics found Hawthorne dead.

Appellant was arrested and indicted for murder. At trial, the jury convicted Appellant of the offense as charged in the indictment. Appellant was sentenced to fifteen years of imprisonment.

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In his first two issues, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction.

### Standard of Review

The court of criminal appeals has recently held that there is "no meaningful distinction between the *Jackson v. Virginia*[3] legal sufficiency standard and the *Clewis* factual sufficiency standard and that "the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *See Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6, 2010). Consequently,

---

[3] 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).

the court of criminal appeals overruled the factual sufficiency standard of review as set forth in *Clewis v. State*[4] and its progeny. *See id.* Therefore, we will not review Appellant's challenge to the factual sufficiency of the evidence.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *LaCour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The jury is the sole judge of the credibility of witnesses and of the weight to be given their testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury's domain. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Likewise, it is the responsibility of the jury to weigh the evidence and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

We measure the sufficiency of the evidence by the elements of the offenses as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

## Applicable Law

A person commits murder if he intentionally or knowingly causes the death of another person or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (Vernon 2003). A person acts knowingly with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the

---

[4] 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

circumstances exist. *Id.* § 6.03(b). A person also acts knowingly if he is aware that his conduct is reasonably certain to cause the result. *Id.*

Direct evidence of the elements of the offense is not required. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Id.* at 14-15. Circumstantial evidence alone can be sufficient to establish guilt. *Id.* at 15. Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *See Montgomery v. State*, 198 S.W.3d 67, 87 (Tex. App.–Fort Worth 2006, pet. ref'd); *Lee v. State*, 21 S.W.3d 532, 539 (Tex. App.–Tyler 2000, pet. ref'd). Intent can be inferred from the extent of the injuries to the victim, the method used to produce the injuries, and the relative size and strength of the parties. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). In a murder case, evidence of a particularly brutal or ferocious mechanism of death, inflicted upon a helpless victim, can be controlling on the issue of intent or knowledge. *Id.* Additionally, a culpable mental state can be inferred from the acts, words, and conduct of the accused. *Id.*

## Discussion

Appellant contends that the evidence is insufficient to show he intentionally or knowingly caused Hawthorne's death and that there was no evidence that he intended to cause serious bodily injury by acts clearly dangerous to human life.

Kelvin Lewis testified that Appellant and Hawthorne had no arguments while they were visiting him. Lewis also stated that neither Appellant nor Hawthorne appeared injured or had blood on him when they left his home. Luis Perez testified that he awoke to Appellant's tapping at his window, and noticed that he was covered in blood. Appellant told his uncle that he had been in a fight with Hawthorne and that Hawthorne was lying on the road because Appellant had "knocked him out." Luis testified that he believed Hawthorne was still alive, but that he looked severely injured. Appellant then dragged Hawthorne by his legs from the road into the grassy area in front of Luis's home. Appellant's uncle saw Appellant slap Hawthorne in the face and say "get up nigger," "I told you not to mess with me," and "I told you to respect me." Appellant wanted Luis to help him place Hawthorne in his vehicle, but Luis refused. Appellant asked to go inside to wash off the blood on his body, and Luis also refused that request. Luis called the police and told them what had transpired. Appellant became enraged, saying that "if I'm going

4

to jail for beating one nigger's ass, I'm going to go to jail for two," and then struck his uncle in the nose. Luis and Appellant's brother Hector then fought with Appellant and subdued him until police arrived. Lufkin police officers first took control of the volatile situation before tending to Hawthorne. By this time, several minutes had elapsed. The responding paramedics were not able to assess Hawthorne until approximately twenty minutes after the incident took place. A paramedic testified that Hawthorne had no vital signs upon his arrival, and because of the length of time that elapsed, no measures were taken in an attempt to revive him. A forensic pathologist performed an autopsy on Hawthorne, and concluded that blunt force trauma caused aspiration of blood into Hawthorne's lungs, resulting in his death.

An examination of Hawthorne revealed that several of his teeth had been knocked out. The swelling on Hawthorne's face was so severe that he appeared unrecognizable. There was significant blood spatter in and on the Mustang. Moreover, there were significant pools of blood in the road where Luis first saw him and in the grass where police found him. Appellant's knuckles were bruised, swollen, and cut. Appellant claimed that Hawthorne struck him, but the paramedics and police officers found no evidence of injury to Appellant. Likewise, Appellant offered into evidence the medical records relating to his treatment at the emergency room, but the records do not show that he sustained any injury other than to his hands.

In his interview with police, Appellant indicated that he was too strong for Hawthorne, and that he acquired that strength from shoveling asphalt. He claimed that he had boxing prowess and that the force of his blows was great. On the videotape, Appellant stated he punched Hawthorne once or twice, then later two or three times, and as many as four times. Appellant gave several different versions of what led to the fight, and conflicting accounts of what actually happened during the fight. At trial, he admitted providing false accounts of what happened. His explanation was that the police misled him into believing that Hawthorne survived the skirmish, and he did not want Hawthorne to get into trouble for fighting. However, the record shows that on several occasions, police told Appellant that Hawthorne died as a result of his injuries.

Questions regarding the weight and credibility of witness testimony are for the jury. *See Santellan*, 939 S.W.2d at 164. When there is conflicting evidence, the jury's resolution of the conflicts is generally regarded as conclusive. ***Van Zandt v. State***, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, writ ref'd). Here, the jury resolved the conflicts in favor of the State, which

it was authorized to do. *Cain v. State*, 958 S.W.2d 404, 409-10 (Tex. Crim. App. 1997). Likewise, given the severity of Hawthorne's injuries, coupled with Appellant's statements that his uncle overheard and admissions to the police, the jury could have inferred that Appellant intended to cause serious bodily injury, that his repeated punching of Hawthorne was an act clearly dangerous to human life, and that Appellant's actions caused Hawthorne's death. Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support the verdict.

Appellant's first and second issues are overruled.

## JURY CHARGE

In his third issue, Appellant raises challenges to the trial court's jury charge. Specifically, in three subissues, he contends that the court's charge failed to require jury unanimity because of the multiple manner and means instruction, the definition of voluntary intoxication was incorrect, and the trial court should have inserted a deadly force self-defense instruction.

### Standard of Review

Our review of alleged error in the jury charge involves a two step process. *Sakil v. State*, 287 S.W.3d 23, 25-26 (Tex. Crim. App. 2009). Initially, we determine whether error occurred; then, if there was error, we evaluate whether sufficient harm resulted from the error to require reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If there was error and if the appellant objected to the error at trial, "reversal is required if the error is 'calculated to injure the rights of [the] defendant,' " meaning that "there must be some harm to the accused from the error." *Sakil*, 287, S.W.3d at 25-26 (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)).

### Unanimity and Election of Manner and Means

Appellant contends that the trial court erred in "denying [Appellant's] request to require the State to elect a theory of the manner and means of committing the offense and thus eliminating the possibility of requiring a unanimous verdict for either theory so believed by the jury."

The indictment alleged that Appellant "intentionally or knowingly cause[d] the death of an individual, namely Wesley Hawthorne, by striking Wesley Hawthorne with [Appellant's]

6

hands or fists. . . ." *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003). In the conjunctive, the indictment read that Appellant, "with intent to cause serious bodily injury to an individual, namely, Wesley Hawthorne, commit[ted] an act clearly dangerous to human life that caused the death of said Wesley Hawthorne, by striking Wesley Hawthorne with [Appellant's] hands or fists." *See id.* § 19.02(b)(2). The trial court's charge to the jury included similar language, but stated the manner and means allegations in the disjunctive.[5] Appellant argues that charging the jury in the disjunctive allowed the jury to find Appellant guilty of murder without a unanimous verdict.

Jury unanimity is required in all criminal cases. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). The jury must agree that the defendant committed one specific crime. *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008). That does not mean, however, that the jury must unanimously find that the defendant committed that crime in one specific way or even with one specific act. *Id.* The unanimity requirement is not violated when the jury is instructed on alternative theories, or manner and means, of committing the same offense. *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004). Where alternate theories of committing the same offense are submitted to the jury in the disjunctive, and the jury is required by the charge to find each element of the offense beyond a reasonable doubt, it is appropriate for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

If the statute in question establishes different manner and means by which the offense may be committed, unanimity is generally not required on the alternate manner and means of the offense's commission. *Jefferson v. State*, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006). In the instant case, Appellant was charged with murder. The murder statute specifies alternative methods or means of committing the same offense. *See* TEX. PENAL CODE ANN. 19.02(b).

The charge in this case allowed the jury to convict Appellant of only one offense, murder, (1) if it found that he intentionally or knowingly caused Hawthorne's death by striking him with his hands and fists, or (2) if it found that he intended to cause Hawthorne serious bodily injury and committed an act clearly dangerous to human life (i.e. striking Hawthorne with his hands

---

[5] When an indictment alleges differing methods of committing a single offense in the conjunctive, the jury may be properly charged in the disjunctive. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). Moreover, an indictment may contain as many paragraphs as are necessary to allege the various manner and means of committing one alleged offense. *Callins v. State*, 780 S.W.2d 176, 182-83 (Tex. Crim. App. 1986).

and fists) that caused Hawthorne's death. The charge tracked the manner and means language of the murder statute. *See* TEX. PENAL CODE ANN. 19.02(b)(1), (2). Thus, whether Appellant intentionally caused Hawthorne's death or whether he intended only to cause Hawthorne serious bodily injury and committed an act clearly dangerous to human life that caused Hawthorne's death, the jury was authorized find him guilty of a single offense—murder.

Appellant was convicted under a statute and jury charge that did not describe different offenses but instead set forth different methods of committing the same offense. *See Yost v. State*, 222 S.W.3d 865, 877 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Therefore, the trial court did not err in submitting the alternate means of committing murder disjunctively, and the jury charge appropriately instructed the jury.

## Intoxication Instruction

During the trial, Appellant used his intoxication at the time of Hawthorne's death as a defense to the murder charge against him. Specifically, he blamed his intoxication for the events that occurred, and therefore urged that he could not have formed the intent to murder Hawthorne. Appellant submitted a proposed definition of intoxication taken from the definition of intoxication in chapter 49 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 49.01 (Vernon 2003). The introductory language to that section provides that this definition applies only in intoxication and alcoholic beverage offenses. *See id.* ("*In this chapter*[,] . . . intoxicated means not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body; or [ ] having an alcohol concentration of 0.08 or more.") (emphasis added).

The trial court denied Appellant's requested instruction and inserted the "voluntary intoxication" instruction instead. *See* TEX. PENAL CODE ANN. § 8.04(a) (Vernon 2003). The instruction following section 8.04(a) is appropriate if there is evidence that might lead a jury to conclude that the defendant's intoxication somehow excused his actions. *See Sakil*, 287 S.W.3d at 26 (citing *Taylor v. State*, 885 S.W.2d 154, 156 (Tex. Crim. App. 1994)). Therefore, the trial court properly denied Appellant's instruction and charged the jury by tracking the language in section 8.04(a). *See id*; *Taylor*, 885 S.W.2d at 156.

## Self-Defense Instruction

Appellant obtained a self-defense instruction at trial, but sought an additional instruction that, if followed by the jury, would have authorized him to employ deadly force. The trial court denied the requested instruction, which Appellant argues was error.

A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a) (Vernon Supp. 2010). A person is justified in using deadly force against another (1) if he would be justified in using force against the other under section 9.31, (2) if a reasonable person in the actor's situation would not have retreated, and (3) when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force.[6] *See* Act of March 20, 2007, 80th Leg., R.S., ch. 1, § 3, 2007 Tex. Gen. Laws 1, 2 (current version at TEX. PENAL CODE ANN. § 9.32 (Vernon Supp. 2010)). " 'Deadly force' is force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." TEX. PENAL CODE ANN. § 9.01(3) (Vernon Supp. 2010).

The defendant has the initial burden of producing some evidence on each of the elements to justify submission of a deadly force self-defense instruction. *See **Tidmore v. State***, 976 S.W.2d 724, 729 (Tex. App.–Tyler 1998, pet. ref'd). The trial court must give a jury instruction on a defensive theory raised by the evidence regardless of whether such evidence is strong, feeble, impeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief. *See **Ferrel v. State***, 55 S.W.3d 586, 591 (Tex Crim. App. 2001). On the other hand, if the evidence, viewed in a favorable light, does not establish an element of the defense, an instruction is not required, and the trial court does not err in refusing to provide it. *Id.*

In the instant case, Appellant testified that Hawthorne was the aggressor and that he struck Appellant, forcing Appellant to defend himself. Ordinarily, the defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction in the jury charge. ***Hayes v. State***, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987). And here, the trial court agreed and

---

[6] We recognize that since Appellant's conviction, the Texas Legislature has amended the self-defense provisions of the penal code to omit the "retreat" requirement that was formerly part of section 9.32(a)(2). *See* Act of March 20, 2007, 80th Leg., R.S., ch. 1, § 3, 2007 Tex. Gen. Laws 1, 2 (current version at TEX. PENAL CODE ANN. § 9.32 (Vernon Supp. 2010)). However, the amendments apply only to offenses committed on or after September 1, 2007. *See* Act of March 20, 2007, 80th Leg., R.S., ch. 1, § 5(a), 2007 Tex. Gen. Laws 1, 2. The offense in the instant case occurred on August 13, 2007.

instructed the jury on self-defense. The question on appeal, though, is whether Appellant was justified in employing *deadly force* in defending himself.[7]

Assuming that, Appellant was correct that Hawthorne struck Appellant first, Hawthorne's taking swings at or actually punching Appellant, under the circumstances presented in this case, does not constitute deadly force sufficient to justify Appellant's deadly force self-defense. *See Ogas v. State*, 655 S.W.2d 322, 324 (Tex. App.–Amarillo 1983, no pet.) (holding that a blow to the face with an open or closed hand does not justify deadly force); *see also Bundy v. State*, 280 S.W.3d 425, 435 (Tex. App.–Fort Worth 2009, pet. ref'd). It is clear from the evidence that once the Mustang stopped and Appellant and Hawthorne exited the vehicle, Hawthorne at some point became unable to defend himself. Yet, Appellant continued to viciously beat him to an unrecognizable state. Furthermore, the Mustang stopped in front of Appellant's uncle's home, and Appellant could have retreated to that location given his admission in describing the fight that he was "too fast" for Hawthorne. But Appellant did not attempt to retreat until after he had further pummeled the fallen and unconscious Hawthorne. A charge on self-defense is unwarranted if there is a lack of evidence showing that a reasonable person would not have retreated. *Riddle v. State*, 888 S.W.2d 1, 7 (Tex. Crim. App. 1994). There is a lack of such evidence here.

Thus, we conclude that the evidence in this case fails to raise a defensive issue because Appellant failed to produce some evidence that would authorize him to employ deadly force. Therefore, we hold that the trial court did not abuse its discretion in refusing to submit an instruction on self-defense in the jury charge.

Appellant's third issue is overruled.

## DISPOSITION

We *affirm* the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered December 15, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*
(DO NOT PUBLISH)

---

[7] In our analysis of this issue, we considered all sources of relevant evidence of record, not just Appellant's testimony. *See, e.g., McDonald v. State*, No. 12-01-00034-CR, 2002 WL 89075, at *2 n.1 (Tex. App.–Tyler Jan. 23, 2002, pet. ref'd) (per curiam, not designated for publication).